**JACKSON et al. v. KNIGHT.   (No. 2973.) \***

(Court of Civil Appeals of Texas.   Texarkana. Jan. 24, 1925.   Rehearing Denied Feb. 5, 1925.)

1. **Waters and water courses** ⊜⟊54—**Riparian owner may lawfully erect levee to control overflows.** ·

Riparian owner may lawfully erect levee on his own land to control overflows and freshets in view of Vernon's Ann. Civ. St. Supp. 1918, art. 5011t.

2. **Waters and water courses** ⊜⟊54—**Riparian owner may not erect levee causing overflow of opposite land.**

Riparian owner may not erect levee to control overflows, if construction at particular place will cause waters in time of ordinary overflow to unnaturally overflow and injure ground of opposite owner.

3. **Appeal and error** ⊜⟊1002—**Disturbance of finding on conflicting evidence not authorized.**

Evidence being conflicting, appellate court is not authorized to disturb jury finding that de-

fendant's levee, at times of ordinary overflow of creek, cast upon opposite riparian land greater volume of flood waters, thereby causing permanent injury.

Appeal from District Court, Hopkins County; Geo. B. Hall, Judge.

Suit by T. I. Knight against J. T. Jackson and others. From a judgment for plaintiff, defendants appeal. Affirmed.

The appellee brought the suit against the appellants for damages for interference with the flow of a stream, causing injury to realty, by the erection of a levee. The petition specially alleges as grounds for liability, in effect, that "by reason of the rebuilding of said levee and placing it in its present permanent condition" the natural channel of the stream was lessened· or made "narrow, with the result of causing water to collect in the 'narrow compass or area'" in greatly increased or unnatural quantities, and to flow with greater rapidity down the creek, and to be cast upon appellee's land. The allegation reads as follows:

"That some time during the year of 1920, about the month of November, the defendants repaired and rebuilt said levee, making it higher, stronger, and more permanent, thereby making it a permanent structure,· which has thus been maintained and will continue to be thus maintained by the defendants. Plaintiff further shows that South Sulphur creek, or river, is a natural waterway, and, prior to the construction of said levee, the water from said creek or river, during times of usual and ordinary freshets and overflows, flowed mainly on the north side and over the defendants' lands; that prior to the erection of said levee the plaintiff's land did not overflow at all, but was capable of being cultivated each year, and was cultivated each year by the plaintiff. That, by reason of rebuilding said levee and placing it in its present permanent condition, the natural flow of the waters of said creek, which would have passed over and stood upon the defendants' land, was caused to flow over and stand upon the plaintiff's land, washing out the land; that the waters were held within a narrow compass or area, were caused to flow in larger volume and with greater rapidity, overflowing the plaintiff's land, washing the soil therefrom and destroying whatever of crops grew thereon, and seriously and permanently damaging the plaintiff's land, and will, in the usual and ordinary course, according to the history of said stream, cause each usual and ordinary freshet to overflow plaintiff's land and cause the soil to be washed therefrom and crops growing thereon to be destroyed."

The damages claimed were for the permanent "depreciation of the value of the land" for the use to which it was devoted.

The case was tried before a jury on special issues as follows:

"Does the defendants' levee, as it was constructed and completed in 1920, cause plaintiff's land to overflow to a greater depth and to a greater extent during the usual and ordinary overflows of South Sulphur creek than before the levee was constructed?"

The jury answered: "Yes."

"What was the difference, if any, in the reasonable cash market value of the 125 acres of land immediately before and immediately after the construction and completion of the levee in the year 1920?"

The jury answered: "$4,000."

Upon this verdict, judgment was rendered in favor of the appellee against the appellants for the sum of $4,000.

South Sulphur creek forms the southern boundary of Delta county and part of the northern boundary of Hopkins county. It is a creek of considerable size, and flows in a southwesterly direction. The creek is a natural water course, and water flows there continuously and comes on through the county and beyond. The appellee owns a tract of land consisting of about 550 acres, situated in Hopkins county, on the east side of South Sulphur creek, the west boundary line of the land running with the meanders of the stream. The land lines extend longer east and west than north and south. Appellee says the east line "runs about a mile and a half from the creek, due east." The land is second bottom land and on considerably higher ground than the land on the opposite side of the creek. The appellants own a tract of land consisting of about 1,000 acres, situated in Delta county, on the west side of South Sulphur creek, the southwest and east boundary lines calling for the meanders of the stream. The north and south lines of the land are much longer than the lines east and west. The west boundary line of appellee's tract is about opposite the middle of appellants' east boundary line. The appellants' land is low-bottom land and is surrounded on the west, and partly on the north and east, by a range of hills. In times of ordinary flood South Sulphur creek overflows on the appellants' land because of the lower banks and slower current. The water leaving the channel of the creek spreads a great distance over appellants' land, following no well-defined channel, and settles there, making the land wet and marshy. To prevent this overflow of their land, and in order to reclaim it for agricultural purposes, the appellants began and completed the construction of a levee substantially parallel with the west bank of South Sulphur Creek, and extending some distance along the same. The levee is in Delta county and entirely on the appellants' land. The levee was erected under survey and plans of the state reclamation engineer, and care and skill were exercised, it appears, in the construction. It is· about 8 feet high, between 24 and 26 feet wide at the bottom, and about 4 feet wide at the top, and more than a mile long. It commences at a point above the flood contour on a range of hills on the extreme southwest of the land, and extends to

a point on the range of hills on the northeast of the land, running substantially straight with the west bank of the creek.

The levee does not follow the meanders of the creek, and is at a distance varying between 50 and 200 yards from the bank of the creek. The natural banks of the creek were not changed or interfered with. The nearest point of the levee to the appellee's west boundary line is about 50 yards at one point, and about 200 yards at another. The earth between the creek bank and the bottom of the levee was utilized for the building of the levee, and left an excavation which is termed in the evidence "a barrow pit." This "barrow pit," or excavation, is described as being from 35 to 40 feet wide, and from 6 to 10 feet deep, and is comparatively straight, with no abrupt bends. According to the evidence the "barrow pit" has the capacity to carry off and did carry off 'a great quantity of flood waters. According to the undisputed evidence there were overflows of the creek annually occurring from 1902 to 1923 inclusive. The flood waters of the creek were greater and higher in 1920, 1921 and 1922 than in former years, except in 1913 and 1919. In 1920 and 1921 there were protracted rains, causing very heavy flood waters. In 1922 and 1923 there were quite heavy flood waters, due to heavy rainfalls. The evidence of the appellants goes to show that the flood waters in the years 1920 to 1923 were carried off by the "barrow pit," and by the natural channel of the creek, and the appellee's land was not overflowed, and if so, to no greater extent than before the levee was built. The appellee's evidence goes to show that since the construction of the levee the volume of flood waters cast on a part of his land, to the extent of about 125 acres or less, has increased three or four times as much as formerly, and has caused the soil to wash off and the water to stand on the land longer, all of which has very materially damaged the land and depreciated its value.

Clark & Clark, of Greenville, and Dial, Melson & Brim, of Sulphur Springs, for appellants.

T. J. Ramey, of Sulphur Springs, and Harrell & Starnes, of Greenville, for appellee.

LEVY, J. (after stating the facts as above). [1, 2] The substantial question in the appeal is whether the appellants are liable for damages to the land of appellee by reason of the construction of the levee. The levee was constructed by the appellants in an effort at the reclamation of their land for agricultural purposes, and its protection from the overflow of South Sulphur creek. A riparian owner may lawfully erect a levee on his own land for the purpose of controlling overflows and freshets in creeks and streams along the land. Article 5011t, Vernon's Ann. Civ. St. Supp. 1918; Simon v. Nance (Tex. Civ. App.) 142 S. W. 661. The reclamation of land and its protection from overflow are private rights as well as in the interest of the public welfare. Under the limitation of the law, though, the landowner cannot exercise such right, even for his benefit, to construct a levee on his side of the creek, if, in so doing, the effect of the construction of the levee at the particular place will be to cause the waters in time of ordinary overflows or floods to unnaturally overflow the ground of the opposite owner and injure them. Sullivan v. Dooley, 31 Tex. Civ. App. 589, 73 S. W. 82; Way v. Roddy (Tex. Civ. App.) 140 S. W. 1148; Fort Worth Improvement Dist. v. City of Fort Worth, 106 Tex. 148, 158 S. W. 164, 48 L. R. A. (N. S.) 994; 2 Farnham on Waters and Water Rights, § 530; 40 Cyc. p. 572. It is a rule of right and justice. There is no rule governing all cases of this character, so that in determining the rights of the parties the particular facts must be kept in mind.

[3] The evidence was conflicting as to whether or not the erection of the levee in this case had the effect of casting increased volumes of waters upon appellee's land and injuring it. The appellants' land, situated on the west side of the creek, is low-bottom land. The ground on the east side of the creek is higher than the ground on the west side. The greater volume of the waters of the creek in times of flood and heavy rains leaves the main current and spreads out over the lower ground on the west side at appellant's land, due to the lower bank of the creek and the inclination of the ground. In these circumstances the levee, in accomplishing the result of preventing the overflow of the creek on the appellants' land, necessarily had the effect to confine the flood waters within the area of space between the levee bank and the east bank of the creek, and to force such waters on down such areaway. This areaway so created either was or was not of sufficient capacity to hold and to carry off the flood waters of ordinary and usual floods or heavy rains, without casting increased volume upon the land of the appellee, situated as it was on higher ground. The levee was located some distance from the west bank of the creek, and at no point was it closer to the bank than 50 yards. The banks of the creek were not changed or altered. There was, too, the excavation, or "barrow pit," about 40 feet wide and from 6 to 10 feet deep, capable of carrying off a large volume of water.

The witnesses in behalf of the appellants say that the flood waters were carried off, and that the appellee's land was not overflowed to any greater extent or volume than before the levee was constructed. On the other hand, the appellee's evidence goes to show that the areaway was not of sufficient capacity to carry off the usual flood waters of that creek, and that since the construction of the levee the volume of the flood waters

cast on a part of his land next to the creek, to the extent of about 125 acres, has been greatly increased, and the value of the land materially depreciated thereby. In view of the evidence, this court would not be authorized to say, as a matter of law, that the jury was not warranted in finding that the effect of the levee was, in times of ordinary overflows of the creek, to unnaturally cast upon appellee's land flood waters in greater volume than before its erection, causing permanent injury to the 125-acre tract as a whole.

The conclusion has been reached that the judgment should be affirmed, and it is accordingly so ordered.

We have considered all the points, which are quite clearly presented by the appellants, and think that reversible error may not be predicated thereon.