**STATE et al. v. SCHLICK et al.**

No. 11568.

Court of Civil Appeals of Texas.  Galveston.

Nov. 11, 1943.

Rehearing Denied Dec. 2, 1943.

Gerald C. Mann, Atty. Gen., Eugene N. Catlett and Richard H. Cocke, Asst. Attys. Gen., and James P. Hart, of Austin, for appellants.

Polk Shelton, of Austin, and Carl G. Stearns, Richard L. Morley, and Chas. W. Bell, all of Houston (Fulbright, Crooker, Freeman & Bates, of Houston, of counsel), for appellees.

GRAVES, Justice.

This general statement is quoted with approval as such from the appellees' brief:

"Appellees, the owners of a farm in Gonzalez County, Texas, consisting of some 526 acres, brought this suit against the State of Texas and its Highway Commission for damages by reason of the admitted construction in July, 1934, by it of Highways 29 and 112 (later known as Highway 200), extending South and Southwesterly from the city of Gonzales, alleging:

"That such farm lies close to the Guadalupe River, a short distance South or upstream from a point where that river and the San Marcos River converge. That both rivers have always had a tendency to, and frequently have, overflowed their banks, and spread their waters over the surrounding countryside; that prior to the erection of the high embankments by the appellants, supporting and carrying such highways, the overflows from such rivers into the Guadalupe Valley and what is known as the Guadalupe Relief-Valley covered such territory over a wide area with a shallow body of water of practically uniform depth, which moved slowly in a Southeasterly direction, the movement and action of such waters having been, prior to the erection by the appellants of such supporting embankments, so slow and gradual that no damage whatsoever was done to the land, including appellees' farm, and no diminution in its value for agricultural purposes (for which it was used and suited) was occasioned in the slightest degree.

"That appellants so constructed such highways—upon high embankments and fills—as to obstruct the natural flow of such waters toward the Southeast, and so as to impound the same and cause them to be thrown onto and across appellees' farm at a place along Highway 112, adjacent to appellees' farm, where no embankments were built, but where the highway was so constructed as to remain at the natural level of the land, thereby causing a 'spillway' for such impounded waters onto and across appellees' land for a width of some 2000 feet. That the highways were constructed without appellees' consent and over their timely protests, although 5.63 acres of the farm was acquired by the State of Texas for the purpose of constructing Highway 112.

"That the farm has always been used by appellees exclusively for agricultural purposes, such being the only purpose for which it is suited; that prior to the infliction of the alleged damage by appellants, the land was highest quality farm land, suited principally for the growing of cotton, corn, and other agricultural products. That by reason of such construction of the highways, appellees' farm has been permanently damaged; in fact, since such construction, has been so damaged on several occasions when flood waters of said rivers were caused to be impounded against the embankments carrying such highways, and forced across said 'spillway' and across appellees' farm in swift and deep torrents with tremendous force, destroying the crops, and carrying away the top soil.

"That appellees' farm had no market value at any of the material times involved, but the actual value thereof, immediately before the construction by appellants of the highways, was $110.00 per acre, and the actual value thereof, immediately thereafter, was only $25.00 per acre.

"Appellants answered, denying that appellees' farm had been damaged, and denying any liability, in the event it had been damaged.

"The trial was had before the court and jury, in the course of which appellants moved for instructed verdict, which was overruled. In answer to special issues, the jury found:

"(1) That appellees' farm was damaged by reason of the construction by appellants of the highways;

"(2) That, specifically, 380 acres thereof was so damaged;

"(3) That immediately before the construction of the highways, appellees' farm had no market value;

"(4) That the actual intrinsic value thereof per acre, immediately before the construction of the highways, was $110.00;

"(5) That immediately after the construction of the highways, appellees' farm had no market value;

"(6) That the actual intrinsic value of the farm per acre, immediately after the construction of the highways, was $25.00.

"Appellants' motion for judgment non obstante veredicto was overruled, and, upon motion by appellees therefor, judgment was entered on the verdict in their favor for the sum of $32,300.00."

The appended sketch, delineating the approximate location and relative position on the ground of the Guadalupe and San

Marcos rivers at their confluence, the Schlick farm, the town of Gonzales, Santa Anna's Mound, and other principal places and objects in the general area surrounding the farm, with which the controversy has to do, is taken from appellants' brief, edited only by marginal pointers as to where the river-confluence and the 1800–2000 foot "spillway" lay:

of highway construction is recoverable against the State, irrespective of whether or not the construction has been negligent, fundamentally attack the judgment upon the claim that it is "both illegal and unjust, because it imposes on the State liability for damages which it did not cause".

The enlarged-upon burden of their appeal, through points of claimed error Nos.

In this court appellants, apparently recognizing the substantive law declared by the Supreme Court in State et al. v. Hale et al., 136 Tex. 29, 146 S.W.2d 731, to the effect that water damage caused by reason

1 to 3, inclusive, and 8, is that the appellees failed to prove the extent of the damage to their land caused by construction of the two highways involved, as distinguished from damages caused by other factors, such

as the inherently low-lying level of the land, its position with reference to the valleys of the two rivers, and its long subjection to overflows from floods in one or the other, or both of them, as well as its characteristic condition as having throughout time immemorial been subject to overflow and resulting damage therefrom by such rivers.

Such contention, it is held, cannot be sustained; it seems to this court to rest upon a misconstruction of both the pleading and proof affecting the distinctive cause of action herein declared and recovered upon by the appellees, towit: it being in effect, that the natural conditions and flood waters the appellants so invoke in their own defense were conclusively shown never, prior to the construction of these two highways, to have damaged their lands at all; but, on the contrary, to have benefitted them, periodically on the recurrence of floods from either or both of the rivers named, by the deposit thereon through the two sloughs denominated on the sketch as "Stahl's Lake" and "Cross Timbers", of silt and alluvium that helped rather than hurt the soil—that never, prior to the completion by the State of these highways on their raised embankments in 1934, had any other visitation than a beneficial one finally resulted to the appellees' land from any of such prior overflows; that following such completion of these highways, however, upon raised embankments along them in the immediate area and neighborhood of appellees' land, with the exception that for some 1800 or 2000 feet on highway No. 112, between such "Stahl's Lake" and "Cross Timbers" sloughs, no embankment across that strip along highway No. 112 was constructed, but the same was built upon a low-lying level for at least 1800 feet between those sloughs, which diverted the pre-existing natural flow of the flood waters in that watershed area and converted it into such a funnel or "spillway" as concentrated the flood waters and threw them with great force up across the appellees' lands, and so damaged them—by tearing holes therein and washing away the top soil therefrom—as to at least reduce their value to the amount the jury found.

The issue thus raised between the parties is the crux of the controversy on the facts, which were well-nigh undisputed (certainly conclusive) in favor of the appellees' pleading and testimony on the point.

In fact, after careful reading of the voluminous record, this court finds no defense by appellants, nor effective answer, to that pleading and proof of such specific condition's having been created by the stated manner of construction of the highways by the State; however, as its arguments run, it depends upon the negative attack of insisting that the appellees failed to prove that such undefended method of construction was the sole factor—or at least was the sole factor in a definite proportion or extent—of the damages appellees so claimed.

It may be that appellees did not by mark and brand isolate and set apart any certain proportion of their damage as having been shown to have been caused by the construction of the highways; instead, their position was, as indicated, that such construction had caused the whole of it; that a static resulting effect of all flood waters prior to the building of those highways had been that no permanent damage, rather always advantage from the deposit of fertilizing soil had been left upon their land, and that all the damage of which they complained had been so caused by the construction and maintenance of the two highways; the evidence, if not undisputed nor conclusive, was clearly sufficient to support the jury's findings to the effect that the whole of the damage recovered for had been the result so visited upon them by the State—that there had been no other contributing factors thereto whatever.

In the exercise of its exclusive province, this court is unable to hold that the jury's finding that 380 acres of appellees' land had been so damaged by the construction of the highways was either contrary to the great weight and preponderance of the evidence, or, indeed, was other than fully supported.

Appellants next, through points Nos. 4, 5, and 6, urge that the judgment cannot stand, because the appellees produced no legally-permissible evidence as to the value of their 380 acres of land just before and just after the claimed flood-water damage thereto, nor of the difference between any such values, nor of whether it had an actual or intrinsic value—having nothing except the testimony of the appellees, E. A. and Ida Schlick, as to the values to themselves only, as distinguished from an actual or intrinsic value thereof, which testimony was accordingly inadmissible, under these authorities: 19 Tex.Jur., page 188; 13

Tex.Jur., p. 154; 17 Tex.Jur., p. 438; Sinclair v. Stanley, 64 Tex. 67; International-Great Northern R. Co. v. Casey, Tex.Com. App., 46 S.W.2d 669; Gulf, C. & S. F. v. Dunman, 4 Wilson Civ.Cas.Ct.App. § 99, 16 S.W. 421; Taylor County v. Olds, Tex. Civ.App., 67 S.W.2d 1102; Aue v. State, Tex.Civ.App., 77 S.W.2d 606 (error refused); Roberts v. Robertson County, Tex. Civ.App., 48 S.W.2d 737 (error refused); Texas Power & Light Co. v. Jones, Tex. Civ.App., 293 S.W. 885 (error refused).

█ This presentment also is deemed not to be well taken; contrarily, there appears to have been ample support for the jury's findings in response to special issues 3 to 6, inclusive, to the effect, as already noted: (1) That immediately before the construction of the highways the farm had no market value; (2) that its actual intrinsic value at that time was $110 per acre; (3) that immediately after the construction of the highways it likewise had no market value; (4) that its actual intrinsic value immediately after such construction was $25 per acre.

It is true the court permitted the appellees, E. A. and Miss Ida Schlick, to testify among other things, what the land had been worth to them both immediately before and after the sued-for flood damage thereto; but, in the state of the other evidence then before the court, the admission of that testimony at all events was a harmless error, if one at all; this for the major reason that there was independently plenty of proof otherwise supporting the enumerated specific findings of the jury, which in the aggregate were—not what the farm had been worth to the appellees at the two material periods inquired about—but what its actual or intrinsic value then was. The coincidence that the values thus found by the jury, on sufficient testimony other than that of the appellees, carried the same $110 per acre before, and $25 per acre after, the alleged flood damage did not denude those findings of the indicated proper support they had, regardless of what the appellees testified had been its value to them as a homestead, etc.

█ In other words, as this court appraises it, after the undisputed evidence had shown that the land had no market value either immediately before or after the construction of the highways, there was further presented amply sufficient, if not conclusive, evidence not only as to the nature, productivity, and yield of it as a farm, together with the income derived therefrom as such a going concern, but also of the destruction and damage thereto wrought by the construction of the highways.

This constituted competent proof of its actual intrinsic value at both of the material dates given, and supported the jury's actual findings, independently of the appellees challenged statements as to its value to them. Tucker v. Adkins, Tex.Civ.App., 76 S.W.2d 815; Lower Colorado River Authority v. Hughes, Tex.Civ.App., 122 S.W. 2d 222; Driscoll v. Nolan, Tex.Civ.App., 130 S.W.2d 400; Alderete v. Cabello, Tex. Civ.App., 278 S.W. 950; St. Louis S.W. R. Co. v. Benjamin, Tex.Civ.App., 161 S. W. 379; International & G. N. R. Co. & G. N. R. R. Co. v. Martin Nicholson, 61 Tex. 550, 551; City of Dallas v. Allen, Tex. Civ. App., 40 S.W. 324, 325; Missouri, K. & T. R. Co. v. Dement, Tex.Civ.App., 115 S.W. 635; St. Louis, I. M. & S. R. Co. v. Green, 44 Tex.Civ.App. 13, 97 S.W. 531; State v. Littlefield, Tex.Civ.App., 147 S.W. 2d 270; Powell v. Houston & T. C. Ry. Co., 104 Tex. 219, 135 S.W. 1153, 46 L.R.A., N.S., 1615.

It would serve no needful purpose to recapitulate or even undertake a full resume of such independent testimony, but the statement of facts upon this feature is well nigh saturated therewith. For example, that of the witness Booth, who had farmed land adjacent to that here involved, being perhaps the most pertinent.

In sum, the trial court submitted the inquiry as to what was the actual or intrinsic value of the land; the jury in response found, as a reasonable and legitimate inference, the items accordingly from evidence which constituted ample support therefor, under the cited authorities, leaving the criticised statements of the two appellees as to what its value at the same time was to themselves out on a limb as a harmless abstraction. While not holding it to have been inadmissible under such authorities as State v. Littlefield, Tex.Civ.App., 147 S.W. 2d 270 (writ of error dismissed, judgment correct); St. Louis S. R. Co. v. Benjamin, Tex.Civ.App., 161 S.W. 379; International & G. N. R. Co. v. Martin Nicholson, 61 Tex. 550, 551; City of Dallas v. Allen, Tex.Civ. App., 40 S.W. 324, 325, the admission of such statements is held not to have constituted reversible error.

■ In this court's opinion, there was no evidence of probative force supporting appellants' contention that other factors than the construction and maintenance of the two highways contributed to the specific damage to their lands, of which the appellees complained; hence the trial court did not err in not confining its special issue No. 6, inquiring what the actual intrinsic value of the Schlick farm immediately after the construction of the highways was, "to damage caused by the highways", as appellants urge. State v. Hale, 136 Tex. 29, 146 S.W.2d 731; Owens v. Navarro, 115 Tex. 26, 280 S.W. 532, also Id., Tex.Civ. App. 281 S.W. 577 and Navarro County Levee Imp. Dist. No. 8 v. Owens, Tex.Civ. App., 35 S.W.2d 771; State v. Malone, Tex. Civ.App., 168 S.W.2d 292; Powell Salt Water Co. v. Bigham, Tex.Civ.App., 69 S. W.2d 788; Jackson v. Knight, Tex.Civ. App., 268 S.W. 773; 13 Tex.Jur., Section 210, page 368.

Indeed, under the Lower Colorado v. Hughes and State v. Malone cases, cited supra, the controlling contentions of appellants in this controversy seem to have been authoritatively adjudicated adversely to them, upon states of fact not in legal effect different from those here existing; that is, that the State had been herein held liable for damages it did not cause, as there were contributing factors thereto, as to which all of its acts were wholly apart. Just as in the Malone case, the evidence here, it is thought, abundantly supported the finding that the highway construction was the sole proximate cause of the specific injuries herein declared upon and recovered for, thereby concretely eliminating all such claimed factors as were thus relied upon by the appellants. Moreover, even if there was any such testimony of probative force, which this court has been unable to find, it was overwhelmed by the greatly preponderating showing the other way. For instance, the showing in this record is conclusive, if not without any real controversion, that the two sloughs, "Stahl's Lake" and "Cross Timbers", that appellants depend upon as the basis for their claim of there having been "contributing factors" alien to their own acts, were simply natural drainage channels across the eastern body of appellees' farm some 2000 feet apart, which, by the overwhelming weight of if not the undisputed evidence, as already recited, had never caused any material damage what-ever to the appellees' farm prior to the construction of these two highways.

That construction, for the first time in the history of that area, as appellants' own sketch, supra, and its proof showed, raised those highways upon embankments from 4 to 12 feet (in varying places) above the pre-existing level of the land, except for the 1800 to 2000 feet between these two sloughs, which was left at or below the prior ground level, thereby choking in and accelerating the passage of all subsequent flood-waters down those channels throughout their length across the appellees' lands, in such way as to distinctively inflict upon them an overflow and a damage therefrom that had never before occurred.

That is the gist of the appellees' case as pled, as proven to the satisfaction of the jury on what is deemed to have been sufficient evidence, and as adjudicated by the court in conformity to what are held to have been authoritative declarations of our appellate courts on analogous facts.

Neither, it is thought, is there lack of sufficient support of the jury's finding that 380 acres were so damaged. None of appellants' witnesses testified with any first-hand knowledge of the condition of appellees' land either before or after the building of these highways, and the documentary evidence they offered upon that feature, particularly their maps, appear to have reflected conditions existing after rather than before the construction of the highways; whereas, on the other hand, testimony presented by the appellees uncontrovertedly was to the effect that they did—prior to the construction of these highways—recondition or refertilize their land after the 1932 flood, which was appellants' chief reliance for their claim of other damage-factors, and did rebuild the top soil thereof; and that, out of a total of 520 acres, 380 acres, not including the "Stahl's Lake" nor "Cross Timbers" channels, were actually thereafter so damaged or destroyed.

■ Perforce of these holdings, no prejudicial error was committed by the court in refusing to submit appellants' requested special issues relating to various independent factors, claimed to have contributed to the damage appellees declared upon—this, simply, because there was no evidence supporting such inquiries.

The record is detailed and bulky, but the briefs and arguments on both sides are

694

specific, clear, and helpful; they reflect, it is concluded, that, in their controlling reaches, the developed facts and findings in this cause classify it as falling well within the settled principles of law, in response to which the trial court decided and sent it here for review.

That judgment, accordingly, will be affirmed.

Affirmed.