LOWER NUECES RIVER WATER SUPPLY DISTRICT, Appellant,

v.

H. T. SELLERS et ux., Appellees.

No. 13389.

Court of Civil Appeals of Texas.

San Antonio.

Feb. 18, 1959.

Rehearing Denied April 15, 1959.

Wood, Boykin & Lanfear, Fischer, Wood, Burney & Nesbitt, Corpus Christi, Reese D. Wade, Beeville, Chas. C. Triplett, George West, for appellant.

W. L. Hardwick, George West, Dan Moody, Austin, Harry J. Schulz, Three Rivers, for appellees.

BARROW, Justice.

This is a suit by appellant against appellees for condemnation for an easement to inundate 805.57 acres of land and the improvements thereon, situated in Live Oak County, Texas. The case was tried to a jury and judgment rendered on the verdict for $627,500. This appeal is from that judgment.

Appellant, by its points one to eight, inclusive, complains of the action of the court in holding that the income tax returns of appellee Sellers, as well as the record supporting such returns, were privileged and inadmissible in evidence, in quashing a subpoena duces tecum requiring the witness Russell Kayce to produce such records, and in holding that the records called for could not be produced even for the purpose of the bill of exception.

Many of appellees' witnesses base their testimony as to the value of the land mainly on what they thought a typical operator would make out of the land, that is, what his income would be, what his expenses would be, in order to arrive at his net profit. This net profit was then multiplied by twenty to give the market value. Appellant's witness Berwick said that what the land had done in the past was taken into consideration, because past experience gave the basis for some of his opinions. Appellant's witness Tayloe testified that in 1950 and 1951 the land should have yielded its full potential.

Appellee, Sellers, testified that had the land not been taken from him he would have been able to make more than $50,000 annually and up to $100,000 annually on the property. He testified that he did not keep a set of books, that he had accountants who made his income tax reports and he was sure they had copies of the reports. He was asked by appellant if he did not get copies of his income tax reports. Objection was made that such copies and the information upon which they were based were privileged. This objection was sustained by the court. Sellers said he sent the information to Russell Kayce, an accountant, and he used the information to make up the returns. The court refused to order appellees to furnish copies of data showing their income from and expenses on their farm. Sellers was asked if he would voluntarily supply his returns, and the court sustained the objection that the question was improper in view of its former ruling. The record shows that if Sellers had been required to answer this question, he would have answered it "No."

Appellant had a subpoena duces tecum issued by the clerk to be served upon Kayce. The subpoena required the witness to search, examine and bring with him and produce any records showing the production and income from and expenses on the tract of land involved in this case, and copies of the income tax returns of Sellers and his wife, showing the income and expenses for each of the years from 1949 through 1957. After the subpoena was served on Kayce in San Antonio, counsel for appellees told him that it was in violation of the federal law to make such disclosures, that they would take the matter up with the court, and if the court required him to come he would be notified. The court held that under the federal law the income tax records could not be introduced and that even if the witness came he would not be permitted to produce such records, even for a bill of exception. Upon such ruling, the witness did not appear nor produce the records called for by the subpoena.

Practically the entire case of appellees as to the market value of the land was based upon what it would produce and how much profit could be made annually from the land. Witnesses were permitted to give their opinion as to the gross income and the required expenses and thus arrive at the net profit that could be made. What the land had produced and what it could be made to produce, as well as its past performance, were used by appellees' witnesses in calculating its value. These matters were all put in issue and

urged by appellees. The witnesses estimated what the production as well as the expenses would be, and there is no evidence as to what the expenses actually had been, except the testimony of appellee Sellers. Therefore, it is patent that it is material to know from the records what the farm produced when it produced its full potential, and also what expenses had been incurred, so as to arrive at the amount of profit or net income therefrom. The appellant was entitled to such evidence.

The record shows that the court's various rulings in this respect were based on his interpretation of Article 7213, Title 26 U.S. C.A., which makes it unlawful for any officer or employee of the United States to divulge or to make known, in any manner whatever not provided by law, the amount or source of income, profits, losses or expenses, set forth or disclosed by any income tax return, and further makes it unlawful for any person to publish any such information in any manner whatever not provided by law.

We have found no authority among the Texas cases directly passing upon the matter of using income tax returns as evidence in a court of justice. We have considered the various authorities in other jurisdictions as well as the Federal Courts, and it is obvious that these authorities are in conflict.

We do not find it necessary to pass upon the direct proposition of whether the actual income tax return or a copy thereof may be used in evidence, but we think it is elementary that the information upon which the income tax return is based, such as the records which are kept and furnished to a public accountant for the purpose of making the tax return, does not come within the provisions of the statute and is therefore admissible in any court in a case in which such information may be relevant. To hold otherwise would be to permit a litigant, such as appellee in this cause, to deliver his entire records to a public accountant or some other person for the purpose or making his return and thereby circumvent the right of a litigant in a court of justice to have such material evidence produced in court. Certainly, the evidence furnished by appellees to the accountant, which was in possession of said witness, as shown by the record in this case, would necessarily show the Sellers' income and expenses, and was evidence to which appellant was entitled.

It appears from the record that appellant did all in its power to secure this evidence. Proper requests were made for the production thereof, the subpoena was properly issued under Rule 167, Texas Rules of Civil Procedure, and every means available to appellant was exhausted to secure this information. The court in quashing the subpoena apparently acted under Rule 177A, T.R.C.P. We have examined the record with reference thereto and have found nothing that would authorize the court to quash this subpoena under the provisions of said Rule. We think that when a litigant is denied the right to introduce material evidence upon a material and controverted issue in a cause, it is error.

The market value of appellees' land was a sharply contested issue in the case. The testimony of the witnesses ranged from $225 to $500 per acre for the land, not including the improvements nor the mineral interests owned by appellees. Inasmuch as the values testified to by appellant's witnesses were apparently disregarded by the jury, and appellant was denied the right to test the accuracy of appellees' witnesses, whose testimony was based largely on prospective income, these records, whatever they showed, were material. Not having the records before us, we are unable to say that their exclusion was calculated to cause and probably did cause the rendition of an improper judgment. In any event, these records and data being admissible in evidence, and appellant having been denied the right to place them in the record for the purpose of the bill of exception, was deprived of

the right to have this evidence and its probable effect appraised by the appellate court. This prevented appellant from making a proper presentation of the case to the appellate court. Rules 434 and 503, T.R.C.P.

Appellant, by its points nine through thirteen, complains of the testimony of appellees' witness Alvin McNair that he had, in 1949 or 1950, offered appellees $400 per acre for the land in question, which was refused. Appellant objected on the ground that the testimony related to an unaccepted offer to purchase. The court overruled appellant's objection, and the witness referred to the offer three times during the morning, and each time appellant objected thereto. During the afternoon, after much argument, the court instructed the jury not to consider the testimony. The record further reflects that appellees' counsel in the closing argument to the jury referred to this excluded testimony and called attention to the fact that this offer had been made and refused, at which time appellant moved for a mistrial. The court again, after considerable argument of counsel, instructed the jury not to consider such offer by the witness McNair. This witness further testified that in his opinion the land, at the time of the trial, was of the market value of $500 per acre.

In view of the fact that McNair in his testimony placed the present value of the land at almost double the value placed thereon by appellant's witnesses, and in view of the fact that appellees' counsel, after hearing and participating in all the arguments before the court on the admissibility and propriety of this testimony, most of which took place in the absence of the jury, unconsciously and inadvertently referred to this evidence; and in view of the further fact that the jury's verdict valued the land very close to the value placed thereon by McNair, we are led to believe that the jury was at least caused to discredit appellant's witnesses. Here we have numerous witnesses expressing their opinions as to the value of the land, and one witness actually offering to buy the

land at a price far in excess of the value placed thereon by these opinions.

It is settled that evidence of unaccepted offers to buy the land involved is not admissible in a condemnation suit. The latest expression thereon is by the Supreme Court in Hanks v. Gulf, Colorado & Santa Fe Railway Co., 320 S.W.2d 333.

Appellees do not question that rule, but contend that the error became harmless because of the instructions of the trial court. In that connection, appellees have filed in the record an ex parte affidavit of all the jurors to the effect that they did not discuss or mention the matter of the McNair offer to buy the land, and did not consider it in arriving at their verdict. While the jurors might have testified, on motion for new trial, what was said and done in the jury room, we know of no rule providing that the record may be bolstered by an ex parte affidavit. Moreover, the statement of jurors as to what they considered or did not consider in arriving at a verdict clearly relates to the mental processes of the jurors and is not a proper subject of inquiry either to sustain or destroy their verdict. This character of testimony is utterly without force or effect, one way or the other, in passing upon the question involved. Sproles Motor Freight Lines v. Long, 140 Tex. 494, 168 S.W.2d 642; Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259; Trousdale v. Texas & New Orleans R. Co., 154 Tex. 231, 276 S.W.2d 242; Putman v. Lazarus, Tex., 293 S.W.2d 493. The question of whether or not this error was calculated to cause and probably did cause the rendition of an improper judgment in the case is a matter for the court to determine upon the whole record in the case. Rule 434, T.R.C.P. We are not unmindful of the fact that other witnesses of appellees valued the land higher than did McNair, and that the verdict of the jury is within the range of such witnesses, nevertheless, the undue prominence and importance

McNair's testimony was given in having it brought to the attention of the jury in the closing argument, thus forcing appellant to renew its objection, and by the court's retiring the jury for another argument thereon before again instructing the jury, we think, the matter was impressed at least upon the minds of the jury that it would be most unlikely that they could remove it from their consideration. Therefore, considering the record as a whole, we have reached the conclusion that the error complained of was harmful to appellant within the meaning of Rules 434 and 503, T.R.C.P.

By its 35th and 36th points appellant contends that the court erred in overruling its exceptions to Special Issue No. 1, together with the court's instruction in connection therewith.

Special Issue No. 1 is as follows:

"From a preponderance of the evidence, what do you find is the market value of the property, as that term is hereinafter defined, belonging to H. T. Sellers and Mary Sellers?

"Answer this special issue in dollars and cents."

In connection therewith the court gave the following instruction:

"By the term 'property' contained in the foregoing Special Issue No. 1 is meant the land involved in this suit which includes the residence, superstructures, improvements, obstructions and appurtenances located on said land but does not include the oil, gas and minerals in said land."

Appellant objected to the issue, together with the instruction on the following ground:

"1.—C. The issue with its instruction submits an erroneous measure of damages in that the value of the improvements should be limited to the increased value they give the surface estate."

Appellant argues that the instruction permitted the jury to consider an erroneous measure of damage in that, in effect, it instructed them that they might arrive at the value by adding the separate value of the land without improvements to the value of the several items of improvements mentioned in the issue.

■ The general rule, which is applicable in this case, has been stated in 29 C.J.S. Eminent Domain § 175, p. 1044, as follows:

"Where land is condemned for public uses, the value of buildings or other improvements and fixtures on the land must be considered in determining the owner's compensation, to the extent that they enhance the value of the land to which they are affixed, the appropriator being required either to take the land with the improvements he finds thereon or to reject it in toto."

See State v. Carpenter, 126 Tex. 604, 89 S.W.2d 979; 18 Am.Jur. 891; Nichols on Eminent Domain, 3rd Ed. Vol. 4, p. 203.

■ In the instant case most of the witnesses valued the land separately from the improvements and valued each item of the improvements separately. This was necessarily so because some of the witnesses were qualified to testify as to the value of land, but not of buildings and other fixtures, while other witnesses were qualified to testify as to the value of the buildings, but not as to the value of farm land. While these separate values on improvements are admissible in evidence in arriving at the compensation, the improvements on the land taken are to be considered a part of the realty. They ordinarily have no market value separate from the land, and when considered in arriving at the amount of compensation or damages, improvements can only be considered to the extent that they add to, increase, or enhance the value of the land. Nowhere in the court's instructions was the jury advised that the consideration of the improvements should be so limited. It is common knowledge

that the amount improvements will increase or enhance the market value of land upon which they are situated, will depend upon the location and use of the land, as well as the kind of improvements, the use for which they are suitable, their cost in relation to the value of the land, and many other factors. We think this erroneous instruction was calculated to and probably did cause the jury to improperly determine the value of the "property" inquired about in said issue and thus led to an improper verdict and judgment.

We think the errors above discussed require a reversal of the judgment, but in view of another trial we believe we should discuss at least some of the remaining points.

■ By its 14th and 15th points appellant contends that the court erred in admitting testimony from witness Cunningham as to the amount of money the City of Corpus Christi has received from sale of water, both within and without the City, over objection that such testimony was irrelevant and prejudicial, and that the court erred in admitting in evidence defendants' Exhibits Nos. 110 through 115, which showed the revenue in dollars from sales made by the said City of water both within and without the City, because said evidence had no relevance to any issue in the case and were prejudicial to appellant.

It appears from the record that appellee Sellers had a contract with the City of Corpus Christi whereby he had the right to use certain water from the Nueces River above the old dam for irrigation purposes on the land in question, which water rights or irrigation rights, under the contract, were subject to the prior rights of the City to use such water. As bearing upon appellees' irrigation rights under such contract, appellant called as a witness John W. Cunningham, who had been with the water department of said City for more than forty years. He testified that the old dam was inadequate, and that wells had been drilled to supplement the water supply for the City. He also testified to the number of days the water ran over the spillway at the old dam.

On cross-examination of this witness, appellees were permitted to ask him to give in dollars and cents the amount of water sold by the City of Corpus Christi from the year 1950 to date, over appellant's objection that the amount of money received for water sales by the City was not material to any issue in the case. The court, over appellant's objection, required the witness to obtain such information. The witness appeared with the records, being Exhibits 110 through 115, showing that the City had received from the sale of water from 1953 to 1958, a period of four years and seven months, more than $11,000,000. In this action we think the court erred. The amount of water in gallons or barrels, as the case may be, was a material issue in the case, but the amount of money received from that water could have no bearing on any issue in the case other than to show that the City had made large amounts of money. This, of course, led the jury to believe that in the future the appellant would make much more money from the new and larger dam. This information reaching the jury could serve no purpose in the case except to prejudice the appellant with the jury in revealing to them the great wealth and profit of appellant and thus appeal to the sympathy or prejudice of the jury.

By its 16th point appellant complains that the court erred in permitting appellee Sellers to testify that he thought, in the future, he could make on an average of $50,000 up to $100,000 annually on the property, and in overruling appellant's objection and motion to strike the testimony on the ground that it was speculative.

It appears from the record that appellee Sellers, while on the witness stand was asked what in his opinion he would have been able to make farming the land in question, had the taking of such land not been determined by appellant, to which he an-

swered: "Yes, sir, I think you can exceed $50,000.00 and get up to $100,000.00 on the property depending upon how much work, of course, you put in." He was then asked by his counsel if he meant that it could be made to produce that amount of money annually on the average, and he answered in the affirmative. Whereupon appellant moved to strike the testimony as being too speculative to have any legal recognition in the case, which motion was overruled by the court.

While we have found no Texas authority on this subject, other jurisdictions almost universally hold that future profits in a farm operation depend upon such speculative matters as weather conditions, labor conditions, market conditions and other factors which vary from year to year. Such testimony is inadmissible and of no value in passing upon the question of the market value of the land in question. In Nichols on Eminent Domain, Vol. 4, pp. 80 and 81, the rule is laid down as follows:

"Anticipated future profits are objectionable not only upon the grounds stated with respect to past profits, but also on the ground that such profits are necessarily conjectural. Such profits depend on so many contingencies that an accurate valuation cannot be based thereon. Experience and observation both show that paper future profits are more often illusory than real.

"Insofar as estimated future profits of agricultural lands are concerned such evidence has been rejected as too uncertain and speculative in character to merit any consideration."

Appellant's 17th point is without merit. Appellee Sellers testified that he had bought and sold royalties and mineral interests, that he was operating the working interest in one well on the land involved, that he had seen and studied the logs of wells in the vicinity of the land involved, and that he had made a study of the production of oil and gas and knew the value of the oil, gas and mineral interests involved. The court did not abuse its discretion in admitting the testimony of appellee Sellers as to the value of the mineral interests involved. City of Teague v. Stiles, Tex.Civ.App., 263 S.W.2d 623; City of Waco v. Roberts, Tex.Civ.App., 12 S.W. 2d 263, affirmed, 121 Tex. 217, 48 S.W.2d 577; State v. Griffis, Tex.Civ.App., 300 S.W.2d 220.

Appellant complains of the action of the court in permitting witnesses Morrison and Tayloe to give their opinions of the value of the land based solely on prospective future production. What we have said with reference to the testimony of appellee Sellers with reference to future profits from the land is applicable here. When the whole of a tract of real estate is condemned, the damages shall be the market value of the property, Sec. 2, art. 3265, Vernon's Ann.Civ.Stats., and it is only where there is no market value for the property that its actual or intrinsic value may be proved or considered. Lower Colorado River Authority v. Hughes, Tex. Civ.App., 122 S.W.2d 222; State v. Schlick, Tex.Civ.App., 175 S.W.2d 688. In view of the fact that this case must be reversed and tried again, the court should not admit evidence of this character.

Appellant, by its 20th and 21st points, contends that the court erred in permitting the witness Cecil H. Dixon to testify with reference to samples of water received by the A. & M. Laboratory, and in admitting in evidence certain chemical analysis reports thereon over appellant's objection that the exhibits were not properly proved up and constituted hearsay.

The witness testified that he was employed by the State Chemists Laboratory at College Station, and that he was supervisor of analytical procedures in the laboratory, including the testing of water, which work was done under his direct supervision and control. He then testified that appellees' exhibits 117 to 123, reports of

chemical analysis of water, showed a correct chemical analysis of the water and were made in the usual and normal course of his business; that he did not know of his own knowledge that the water tested came from appellees' land; that Mrs. Eunice Nichols did the actual testing; and that he was not close enough to know if the water tested was the water in question or that she was using standard procedures. We find no error in admitting the chemical reports in evidence under the testimony of this witness, provided the samples tested are properly traced by competent evidence, either by this witness or by some other evidence, showing them to be the same as came from appellees' land. American General Ins. Co. v. Dennis, Tex.Civ.App., 280 S.W.2d 620; Morris v. Ratliff, Tex.Civ. App., 291 S.W.2d 418.

By its 25th, 26th, 27th and 28th points appellant contends that the verdict of the jury in answering Special Issue No. 3, that the value of the minerals after taking the surface would be nothing, is without support in the evidence, that there is insufficient evidence to support the verdict; that the answer is contrary to the preponderance of the evidence, and that the answer is contrary to appellees' pleading. These points must be overruled.

Appellees offered the testimony of two expert witnesses on the question of the value of the minerals after the taking, M. O. Turner and Keith Renfro. The testimony of these witnesses is quite lengthy and we see no reason to burden this opinion by a lengthy quotation therefrom. The substance of such testimony is that the land in question will be under some twelve feet of water stored for domestic purposes, and that to drill additional wells and produce the wells would be so hazardous and expensive an operation that it would not pay to attempt to produce and recover the oil; and that the minerals after flooding the land would be of no value. Appellant has not directed our attention to any evidence to the contrary except that the witness

Turner said, the history of the oil business is that if substantial reserves exist or are thought to exist, operators will find a way to get it out. The testimony of these witnesses has probative value and supports the jury's answer. We have examined the evidence and are unable to say that the verdict of the jury is so against the overwhelming preponderance of the evidence as to be manifestly wrong or unjust.

By points 29 and 30, appellant contends that the jury's finding that the market value of the overriding royalty and mineral interests owned by appellees in the land involved immediately before the taking was $140,000, is not supported by any evidence and is not supported by sufficient evidence. These points are overruled. The answer of the jury is supported by the testimony of appellee Sellers, and by the witnesses Turner and Renfro, the only witnesses on the subject whose testimony has been called to our attention.

By points 31 and 32, appellant contends that the court erred in overruling its exceptions to Special Issue No. 1, to the effect that there is no pleading or evidence to support the submission of such issue. The gist of appellant's complaint, as we understand it, is that the court in this issue permitted the jury to consider the entire fee in the land rather than an easement for reservoir purposes. These points are under the facts in this case without merit. This condemnation is for the perpetual use of the entire 805.57 acres of land for reservoir purposes and to perpetually inundate and overflow the same. The evidence shows that the land will be under some twelve feet of water.

We think this case is controlled by the decision of the Supreme Court in Thompson v. Janes, 151 Tex. 495, 251 S.W. 2d 953, wherein the Court held that in cases of condemnation of easements where the easement deprives the owner of any beneficial use of the land, the landowner may recover as damages the market value of

the fee. See also, 18 Am.Jur., Eminent Domain, § 251; Nichols on Eminent Domain, 3rd Ed., § 43.

Under the record before us, we find no merit in appellant's points 33 and 34. While it is true that only an easement in the use of the surface is taken, the evidence shows without dispute that the land will be submerged under twelve feet of water, that the use is perpetual and deprives the owners of the fee of any beneficial use of the land. In such case, the law is settled that the owner of the land may recover as damages the market value of the land. Thompson v. Janes, supra.

We do not deem it necessary to discuss appellant's remaining points.

The judgment of the trial court is reversed and the cause remanded.