**H. Ray BRIDGES, Appellant,**

v.

**TRINITY RIVER AUTHORITY of Texas, Appellee.**

**No. 1126.**

Court of Civil Appeals of Texas, Tyler.

June 29, 1978.

Rehearing Denied Aug. 31, 1978.

H. Ray Bridges, Trinity, for appellant.

Lloyd C. Martin, Smither, Martin & Jaggard, Huntsville, for appellee.

MOORE, Justice.

This is a condemnation suit wherein Trinity River Authority of Texas sought to acquire the fee simple title to a 26.5-acre tract of land for the purpose of constructing a lake known as the Livingston Reservoir. The case was tried before a jury and in response to a single special issue the jury found that the reasonable market value of the land in question was $400 per acre. Pursuant to the verdict, judgment was rendered against Trinity River Authority for the total sum of $10,600. Thereafter, H. Ray Bridges, the landowner, perfected this appeal. For convenience, Trinity River Authority will hereinafter be referred to as the "condemnor" and the landowner will sometimes be referred to as the "condemnee."

We affirm.

The record reveals that the condemnee, H. Ray Bridges, purchased the 26.5-acre tract in question on March 1, 1967, from R. C. Kennedy, a co-defendant [1] in the suit, for the sum of $12,000, paying $1,200 in cash and executing a vendor's lien note for $10,-800, payable in nine annual installments of $1,200 each, including interest. Condemnee admitted in his testimony that at the time he purchased the land he knew that it would be condemned for the purpose of constructing the Livingston Reservoir. Within three months after he purchased the land the condemning authority filed its petition in condemnation and took title thereto on December 3, 1968. The record shows that shortly after the landowner purchased the land until just before it was inundated by the Livingston Reservoir, he cultivated approximately 5 acres of the land, growing and marketing vegetables therefrom in large quantities. The remainder of the tract was wooded and, being near the river, had some sloughs thereon. Condemnee irrigated his crops with water from the sloughs and the river, although he admitted he did

---

1. Although there were other co-defendants in the court below, H. Ray Bridges is the only party to this appeal.

not have a permit from the State or the condemning authority to use the river water for such purposes.

Prior to the trial, the condemnor filed a motion in limine requesting the court to exclude any and all evidence from the landowner or any other witness relating to the past, present or anticipated profits to be derived from the business of truck farming or raising various vegetables for sale, either at wholesale or retail, on the ground that such profits were speculative and too uncertain to establish the market value of the land. The trial court sustained the motion and as a result the landowner was not permitted to prove past or future profits from his truck farming operations and hence was not permitted to establish the value of the land by what is commonly known as the "income capitalization" method of valuing land.

Under the first and second points of error, condemnee complains of the action of the trial court in sustaining the motion in limine and in excluding the testimony of the witnesses offered by the condemnee to establish past or future profits derived from his truck farming operations. Condemnee argues that he was entitled to establish market value based on the income capitalization method of valuation and the court therefore erred in prohibiting him from offering any proof of the net income per acre which he derived or could have derived from the truck farming business.

While the condemnee was not allowed to offer any evidence of past or future profits before the jury, such evidence was offered and appears in the record by bills of exception. The testimony offered on the bill shows that the land in question was fertile river bottom land and, being adjacent to the Trinity River, was well suited for growing vegetables and other crops on a year-round basis; that on land such as this a truck farmer could expect to earn, under average conditions and management, between $1,800 and $2,200 per acre annually; and that upon applying the income capitalization method of valuation to the entire 26.5-acre tract it would have a market val-

ue of approximately $33,000. Condemnor took the position that the income capitalization approach was too speculative to be used as a means to determine market value and that the proper method of valuation was the market data approach, i. e., what the land would bring on the open market before condemnation.

It is generally held in this State that evidence as to profits from a business is not admissible to prove the market value of land in condemnation proceedings, except in certain limited circumstances. In *Reilly v. State*, 382 S.W.2d 116, 121–22 (Tex.Civ.App.—San Antonio 1964, writ ref'd n. r. e.), the court stated the rule as follows:

"Under the Texas decisions income or profits from a business are admissible in evidence in condemnation cases in only two situations: (1) In those cases where the landowner's business has been temporarily interrupted because of a denial of access the landowner can recover his loss of profits as an element of damage. *Hart Bros. v. Dallas County*, Tex.Com. App., 279 S.W. 1111; *City of La Grange v. Pieratt*, 142 Tex. 23, 175 S.W.2d 243; *Gandy v. State*, Tex.Civ.App., 293 S.W.2d 534. (2) In those cases where only a part of the landowner's land is taken, an owner may show loss of profits as an injury to his business, not as a separate item of damage, but as affecting the market value of the remaining land and improvements for the uses to which they were adapted and were being put. *City of Dallas v. Priolo*, 150 Tex. 423, 242 S.W.2d 176; *Milam County v. Akers*, Tex.Civ. App., 181 S.W.2d 719.

. . . . .

"With the exception of the above two mentioned situations, the Courts have held that business profits are too uncertain, speculative, conjectural and remote to be considered as a basis for computing market value. *State v. Parkey*, Tex.Civ. App., 295 S.W.2d 457. . . ."

In cases involving farming operations, our courts have specifically held that profits

from a farming business are of no value in passing on the market value of the land because they are too speculative. It is said that profits from a farming business are not reliable because they depend on such speculative matters as weather conditions, labor conditions, market conditions and other factors which vary from year to year. Consequently, since profits depend on so many contingencies, an accurate valuation cannot be based thereon. *Lower Nueces River Water Supply District v. Sellers*, 323 S.W.2d 324 (Tex.Civ.App.—San Antonio 1959, writ ref'd n. r. e.); *Sjolander v. City of Houston*, 551 S.W.2d 166 (Tex.Civ.App.—Beaumont 1977, no writ history). Upon applying the foregoing principles of law to the facts in the present case, it appears that the proffered evidence as to profits was properly rejected because such evidence was too uncertain and speculative. It follows that the "income capitalization" method of determining the market value was not applicable and the trial court did not err in sustaining the motion in limine. Accordingly, the first and second points are overruled.

▮ Under the third point condemnee contends that the trial court erred in allowing the condemnor to elicit testimony from witnesses R. C. Kennedy and Wayne Ford and from condemnee while testifying in his own behalf, pertaining to the transaction in which he purchased the property from R. C. Kennedy. Also, in his seventh point, condemnee contends that the court erred in permitting the witness Wayne Ford to testify that the land had a market value of $400 per acre, because his testimony was largely based on condemnee's transaction with Kennedy.

Kennedy testified that at the time the land was sold, condemnee Bridges requested that the interest be included in the payments so that he would know the amount he would have to pay each year. Kennedy testified that on a per-acre basis the sale's price was probably $350 per acre or something in that neighborhood after deducting the interest thereon, and that he thought he sold it at a good price.

Both Kennedy and Bridges acknowledged in their testimony that the sale of the land in question was a free and open market transaction. Bridges, however, disagreed with Kennedy as to the price per acre of the land. He testified that the purchase price was $500 an acre and offered in evidence a sales agreement in which Kennedy offered to sell him the land for $500 an acre.

Wayne Ford, a land appraiser called by the condemnor, testified that he had been employed to appraise the land in question and that he considered the transaction between Kennedy and Bridges in making his appraisal. He testified that based upon the information he gathered from that transaction, as well as other comparable sales in the area, he was of the opinion that the 26.5-acre tract had a market value of $400 per acre.

Nowhere in condemnee's points of error does he assert that any of the foregoing testimony was admitted over his objection. We have searched the record in vain in an effort to find where any objection of any nature was made and have found none. Nowhere in his brief does condemnee refer us to any pages in the statement of facts where any objections to the testimony may be found as required by Rule 418, Tex.R. Civ.P. Absent proper and timely objections to the testimony, any complaint as to its admissibility was waived and such complaint will not be considered for the first time on appeal. Rule 418(e), Tex.R.Civ.P.; *Hammon v. Texas & New Orleans Railroad Co.*, 382 S.W.2d 155 (Tex.Civ.App.—Tyler 1964, writ ref'd n. r. e.). The third and seventh points are overruled.

Complaint is made in the fourth, fifth and sixth points of the action of the court in admitting into evidence, over objection, the price at which three other tracts of land had been sold near the time condemnee purchased the 26.5-acre tract in question. He argues that such evidence was inadmissible and harmful because such sales were not comparable in that they were too remote in time and differed as to location, character, use, potential use and, in one instance, size. He also objected on the

ground that none of the three tracts were shown to be irrigated.

Wayne Ford testified that he had done extensive appraisal work for the condemning authority on the Livingston Reservoir. In order to appraise the subject property, as well as other properties within the reservoir, he testified he had investigated virtually every sale that had occurred within the area within six years prior to the date of the taking of the subject property on December 3, 1968. He went into detail on the manner in which he confirmed the purchase prices paid and the facts concerning the sales and how he utilized those sales in forming an opinion of the value of property in the area, including the subject property. He candidly acknowledged that no two properties were alike and that appraising was not an exact science. He fully explained the manner in which appraisers had to make adjustments of comparable sales in order to value the property that was the subject of their appraisal.

Wayne Ford acknowledged the land in question to be good fertile river bottom land suitable for truck farming. He testified, however, that access to the property was through a lane that went through several properties with the subject property having no county road frontage. He then discussed three other sales which he considered to be comparable to the 26.5-acre tract, explaining the differences between those sales and the subject property and making adjustments for each sale. His approach to value was the market data approach, which entails relying on sales meeting the test of similarity. Based on this approach and his experience as an appraiser, he was able to formulate an opinion of the market value of the land.

The first sale considered by Ford was from Norma Walker to Meta Harrelson in April 1966, involving 20 acres. It was a long, narrow tract about 300 feet in width, had sandy soil and was wooded; although some of it was described as having been cut over. He described it as upland and acknowledged that it could not be irrigated from any public water. The sales price was $200 per acre. As a part of the consideration, the buyer agreed to dedicate to the county a portion of the land for a roadway.

The second sale was from the First National Bank of Huntsville to J. P. Boone in May 1966, involving a 64-acre tract. It was described as being half open and half wooded, with the open portion thereof being used to raise corn and sorghum. It was described as upland which was not being irrigated. The sales price was $250 per acre.

The other sale was from the Gertrude Murphy estate to C. H. Jones in October 1968, involving 331 acres. About 160 acres was open land used to raise grass or hay and the balance was wooded. The sales price was $260 per acre.

Ford testified that in addition to the three aforementioned sales he was familiar with quite a few other sales in the area and that the sale between Kennedy and Bridges, the condemnee, for $350 per acre fell within the upper limits of market values along the river bottom. He testified he placed heavy reliance upon the sale from Kennedy to Bridges since it occurred approximately 90 days before the condemnation proceeding was filed. He testified that on the basis of his experience as an appraiser, and after having taken into consideration those sales mentioned as well as others he had examined, he came up with a figure of $400 per acre, after having given the condemnee the benefit of some enhancement in value. Condemnee offered no evidence whatsoever as to the market value of the land. Consequently, the testimony of Wayne Ford constituted the only evidence before the jury as to the market value of the land.

The use of comparable sales is commented on in Rayburn, Texas Law of Condemnation sec. 117, p. 382, as follows:

"Actual market sales, as bearing upon ultimate value issues, have been many times characterized as the best and soundest of the various methods of valuation, for they immediately add strength, reason and weight to an expert opinion witness's testimony, if his opinion is in

line with the price range that is disclosed by a study of the market sales."

■ Evidence of sales of comparable properties may be offered (a) on direct examination of expert or lay witnesses as independent substantive evidence of the value of the property to which the comparison relates, or (b) on direct examination of the value witness to give an account of the factual basis upon which he founds his opinion as to the value of the real estate in controversy, or (3) on cross examination of the value witness to test his knowledge, experience and investigation and thus affect the weight to be given to his opinion. *Hays v. State*, 342 S.W.2d 167, 170 (Tex.Civ. App.—Dallas 1960, writ ref'd n. r. e.); *Bruner v. State of Texas*, 391 S.W.2d 149, 153 (Tex.Civ.App.—Fort Worth 1965, writ ref'd n. r. e.). Comparable sales are admissible in evidence if it can be shown as a predicate that the lands involved in prior sales are similar to those taken. The trial court has great discretion in determining whether sales offered in evidence are comparable to the land being taken, and a ruling by the court that a prior sale is sufficiently similar and therefore admissible will not be reviewed except to determine whether there has been an abuse of discretion. *Crouch v. State*, 413 S.W.2d 141 (Tex. Civ.App.—Houston 1967, no writ history); *Trinity River Authority v. Hutchings*, 437 S.W.2d 383 (Tex.Civ.App.—Beaumont 1969, no writ history). Such comparable sales are generally admissible unless it should appear that reasonable minds cannot differ from the conclusion that the evidence of another sale lacks probative force because of dissimilarity. *Hays v. State*, supra at 174.

In our view the comparable sales were not so dissimilar as to make them inadmissible as a matter of law, and the action of the trial judge in admitting them into evidence does not reflect error. Even if error, we fail to see how such could have resulted in any harm to the condemnee. Although condemnee knew that he would not be permitted to establish market value by the income capitalization approach at the time the motion in limine was sustained, he never at any time throughout the trial offered any other evidence to establish market value. As a result, the only testimony in the record as to market value was that given by Wayne Ford. The jury found the market value was $400 per acre, the maximum amount authorized under the evidence. Under the circumstances we fail to see how the alleged error, if any, was calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, Tex.R. Civ.P. The fourth, fifth and sixth points are overruled.

By the eighth and ninth points, condemnee complains of the refusal of the trial court to submit two of his specially requested issues inquiring as to (1) whether the property in question had a market value and, if not, (2) what the intrinsic value of the property was on the date of the taking. Condemnee sought to establish that the 26.- 5-acre tract was "unique" and that the traditional definition of "market value" could not be applied. He sought to establish this by showing that the highest and best use of the land was for truck farming purposes and that its capability was of unparalleled character.

■ When the whole of a tract of land is condemned, as here, the damages shall be the market value of the property. Tex.Rev. Civ.Stat.Ann. art. 3265, sec. 2. It is only where there is no market value for the property that its actual or intrinsic value may be proved or considered. *City of Austin v. Cannizzo*, 153 Tex. 324, 267 S.W.2d 808 (1954); *Lower Nueces River Water Supply District v. Sellers*, supra. We find no evidence that the land in question had no market value. The testimony of the witness Wayne Ford shows that it had a market value and this testimony is supported by evidence showing that the land in question was actually traded on the open market between condemnee and R. C. Kennedy for $350 per acre only a short time before the taking. There being no evidence that the land had no market value, the issue of its intrinsic value was not raised. It follows that the court did not err in refusing to submit the requested issues in this regard.

The eighth and ninth points are accordingly overruled.

 Under the tenth, eleventh and twelfth points condemnee argues that there was no evidence of probative force to support the jury's finding that the market value of the 26.5-acre tract of land was $400 per acre. Alternatively, condemnee contends that the evidence was insufficient or that the finding was against the overwhelming weight and preponderance of the evidence.

The only evidence in the record relating to the market value of the land in question is to be found in the testimony of Wayne Ford. The condemnee took the position throughout the trial that he was entitled to establish market value by the income capitalization approach or, in the alternative, that he was entitled to prove intrinsic value since the land had no market value. Although condemnee failed to establish a cause of action on either theory, he rested his case without offering any evidence as to the market value of the land. Hence these points of error direct us to the undisputed testimony of Wayne Ford that the land had a market value of $400 per acre.

The "no evidence" point presents a question of law. Our consideration of this point is limited to a determination of whether the testimony of Wayne Ford constitutes any evidence to support the jury's finding that the land in question had a market value of $400 per acre. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947); *In re Olsson's Estate*, 344 S.W.2d 171 (Tex.Civ.App.—El Paso 1961, writ ref'd n. r. e.). We hold that the testimony of Ford is of sufficient probative force to support the jury's finding, and we accordingly overrule the tenth point.

In view of the fact that the evidence relating to market value is uncontroverted, we do not feel that the record would justify a holding that the evidence is insufficient to support the jury's finding or that the judgment is against the overwhelming weight and preponderance of the evidence. Points eleven and twelve are overruled.

The judgment of the trial court is affirmed.