COLLIN COUNTY, Texas, Appellant and Cross–Appellee

v.

HIXON FAMILY PARTNERSHIP, LTD., Appellee and Cross–Appellant.

No. 05–10–00601–CV.

Court of Appeals of Texas, Dallas.

May 9, 2012.

Baxter W. Banowsky, Scott D. Levine, Banowsky Betz & Levine, P.C., Dallas, TX, for Appellant.

Mark Heidenheimer, Mark Heidenheimer, P.L.L.C., McKinney, TX, for Appellee.

Before Justices MURPHY, FILLMORE, and MYERS.

## OPINION

Opinion By Justice FILLMORE.

This appeal concerns a jury's condemnation awards in favor of landowner appellee, Hixon Family Partnership, Ltd. (the Partnership), in connection with the partial taking of two parcels of real property by the condemnor, appellant Collin County, Texas (the County). In two issues, the County asserts the trial court erred in overruling the County's plea to the jurisdiction and admitting the testimony of the Partnership's appraisal expert. The Partnership filed a cross-appeal. In two cross-points of error, it asserts the trial court erred in admitting the testimony of the County's appraisal expert and preventing the Partnership's general partner from testifying as to his opinion concerning the market value of one of the properties taken by the County. We affirm the trial court's judgment.

## Background

The County instituted condemnation proceedings for the purpose of obtaining real property owned by the Partnership to be used in connection with construction of a highway known as the Collin County Outer Loop. The County filed two petitions in condemnation against the Partnership, seeking to condemn portions of two parcels of land: a 13.793 acre parcel out of a fifty-seven acre tract east of State Highway 5 (the Eastern Tract); and a 0.0526 acre parcel out of a thirty-seven acre tract west of State Highway 5 (the Western Tract).

The trial court appointed special commissioners to assess the Partnership's damages occasioned by the condemnations. The awards of the special commissioners were filed with the trial court, and the Partnership filed objections to the amounts of the awards. The County deposited sums equal to the amounts of the awards into the registry of the court. The Partnership made application to withdraw the awards, and, upon order of the trial court, withdrew the awards.

The two proceedings were consolidated and tried as a single matter. A jury found the market values of the parcels taken from the Eastern and Western Tracts on the date of takings to be $455,169 and

$2,500, respectively.[1] The trial court credited the County's prior deposit of the amounts of the special commissioners' awards against the jury's verdict for each parcel and rendered judgment against the County for the unpaid balance, plus interest, and costs. The County appealed the trial court's judgment, and the Partnership cross-appealed.

**The County's Plea to the Jurisdiction**

In its first issue, the County contends the trial court erred in overruling its plea to the jurisdiction. The County asserts the Partnership did not invoke the trial court's subject matter jurisdiction by filing its objections to the special commissioners' awards.

*Standard of Review*

■ Whether a court has subject matter jurisdiction is a question of law. *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002). Appellate review of a trial court's ruling on a plea to the jurisdiction is de novo. *Texas Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004).

*Analysis*

The Partnership was formed as a Texas limited partnership in 2001. Its right to conduct business in the State was forfeited on January 20, 2006, because it failed to file a periodic report required by statute. *See* TEX. BUS. ORGS.CODE ANN. § 153.307(a) (West Supp. 2011). By order of the Secre-

tary of State dated May 24, 2006, the Partnership's certificate of registration was cancelled for failure to file the periodic report. *See id.* § 153.311(a)(1) (West Supp. 2011). The County filed pleas [2] to the jurisdiction contesting the trial court's subject matter jurisdiction, based on the argument that the Partnership's certificate of registration had been cancelled by the Texas Secretary of State. The County asserted that because the Partnership had forfeited its right to transact business in the State, the Partnership could not "maintain an action, suit or proceeding in a Court of this State." *See id.* § 153.309(a)(1) (West Supp. 2011) (If its right to transact business in the state is forfeited, a limited partnership "may not maintain an action, suit, or proceeding in a court of this state[.]"). The trial court denied the County's pleas to the jurisdiction. The County later filed a "renewed" plea to the jurisdiction or, alternatively, a plea in abatement,[3] and the trial court denied the County's renewed plea to the jurisdiction.

■ The process of land condemnation in Texas involves several steps. If the condemnor and condemnee cannot agree on the value of the condemned property, the condemnor must file a petition in condemnation in either the district court or county court at law. TEX. PROP.CODE ANN. § 21.003 (West 2004). The trial court will then appoint three special commissioners who hold an administrative hearing and

---

1. The Partnership's appraisal expert testified that the 13.793 acres taken from the Eastern Tract had a market value of $40,000 per acre or $551,720, and the 0.526 acre taken from the Western Tract had a market value of $54,000 per acre or $2,840. The County's appraisal expert testified that the market value of the property taken from the Eastern Tract had a market value of $28,000 per acre or $386,204, and the property taken from the

Western Tract had a market value of $40,000 per acre or $2,104.

2. Before consolidation of the condemnation proceedings, the County filed a plea to the jurisdiction in each of the proceedings.

3. On appeal, the County has not challenged the trial court's failure to grant the County's plea in abatement.

file in the trial court an award that reflects the special commissioners' determination of the value of the condemned land. TEX. PROP.CODE ANN. §§ 21.014, 21.015 (West Supp. 2011); § 21.018 (West.2004). The condemnor must pay the amount of the award to the condemnee or deposit that amount in the registry of the trial court. If either party is dissatisfied with the award, the party may file objections with the trial court. TEX. PROP.CODE ANN. § 21.018(a). After citing the adverse party, the trial court then tries the case in the same manner as other civil cases. *Id.* at 21.018(b). Once objections are filed and citation is served, the special commissioners' award is vacated and may not be reinstated. *Amason v. Natural Gas Pipeline Co.*, 682 S.W.2d 240, 242 (Tex.1984); *see also State v. Carlton*, 901 S.W.2d 736, 739 (Tex.App.-Austin 1995, no pet.) (filing of objections coupled with service of citation on the adverse party signals the end of the administrative proceeding and prevents reinstatement of the special commissioners' award). Service of citation triggers the condemnor's legal obligation to proceed to trial and prove its right to condemn the property. *Denton Cnty. v. Brammer*, 361 S.W.2d 198, 200 (Tex.1962).

The County's jurisdictional argument has three elements. First, the County contends the Partnership is the plaintiff in the condemnation lawsuit. In support of its argument, the County points to the fact that the Partnership withdrew the special commissioners' awards from the registry of the court and is seeking amounts in excess of the awards, the Partnership proceeded first with its evidence at trial, and the Partnership opened and closed with respect to jury argument. Second, the County contends that because the Partnership forfeited its right to transact business in Texas, the law does not permit the Partnership to maintain a lawsuit in the courts of the state. Third, the County

posits that because the Partnership cannot maintain a lawsuit in Texas, the trial court lacked subject matter jurisdiction over the condemnation proceeding. We disagree with the County's jurisdictional argument.

■ Contrary to the County's contention, a condemnee's filing of objections to a special commissioners' award does not constitute the initiation of a lawsuit by the condemnee; it simply converts the special condemnation proceeding, which was initiated by the filing of a petition by the condemnor, into a suit and invests the trial court with jurisdiction over the subject matter of the case. *Brammer*, 361 S.W.2d at 200; *see also City of Carrollton v. OHBA Corp.*, 809 S.W.2d 587, 588–89 (Tex. App.-Dallas 1991, no writ) (proceeding becomes a civil case, and the district court has jurisdiction to determine all issues in the suit).

In *Brammer*, special condemnation proceedings were initiated by Denton County, Texas to condemn land owned by Brammer. Brammer filed timely objections to the special commissioners' award, but allowed seven years to pass before having citation issued and served, and allowed five years to pass after withdrawal of the award from the registry of the court before obtaining a trial setting. At trial, Brammer stipulated that Denton County had the right to condemn the land, and the case proceeded to trial solely on the issue of the value of the land to be taken and the damages to the remainder of Brammer's land by reason of the taking. The trial court rendered judgment for Brammer in an amount exceeding the special commissioners' award. On appeal, the supreme court held that the trial court abused its discretion in failing to conclude that the record raised a conclusive presumption that Brammer had abandoned his objections to the special commissioners' award.

The supreme court indicated that certain legal principles controlled its decision:

> We recognize that the filing of objections to an award of Commissioners by a condemnee does not constitute the institution of a suit by the condemnee.... We recognize that the filing of the original objections and exceptions by Brammer simply converted the special condemnation proceedings into a suit and invested the county court with jurisdiction of the subject matter of the case. The filing of the original objections in this case vacated the award of the special Commissioners. The condemnor, Denton County, became the plaintiff and Brammer, the condemnee, became the defendant. Although the condemnee, Brammer, became the defendant, we construe the statute, Article 3266, supra, to mean that the condemnee, Brammer, had the burden of causing the issuance of citation and the obtaining of service of such citation upon the condemnor, Denton County. While the condemnor, Denton County, as plaintiff, had the burden of proving all the essentials necessary to show a right to condemnation, and had the burden of going forward to trial, it was under no legal obligation to do so unless and until it had been served with citation.

*Brammer*, 361 S.W.2d at 200 (citations omitted). In determining that the condemnor was the plaintiff before the trial court, the supreme court in *Brammer* did not distinguish between a challenge to an award based on lack of authority of the condemnor to take the property and a challenge to an award based on value of the condemned land.

■ When, as here, the amount of the special commissioners' award deposited by the condemnor into the registry of the court is withdrawn by the condemnee, the issue for litigation is adequate compensa-

tion. *See State v. Jackson*, 388 S.W.2d 924, 925–26 (Tex.1965). Since adequate compensation is an issue on which the condemnee has the burden of proof, withdrawal of funds deposited in the registry of the court has the effect of shifting the burden of proof and the burden of proceeding to trial to the condemnee. *Stuart v. Harris Cnty. Flood Control Dist.*, 537 S.W.2d 352, 354 (Tex.Civ.App.-Houston [14th Dist.] 1976, writ ref'd n.r.e.); *see also Phillips v. Sw. Bell Tel. Co.*, 559 S.W.2d 464, 465 (Tex.Civ.App.-Houston [14th Dist.] 1977, no writ) (in condemnation proceeding, where the only questions submitted relate to market value and damages, the condemnee has the right to open and close the jury argument). However, the shifting of the burden does not cause the condemnee to become the plaintiff in the trial court. *Brammer*, 361 S.W.2d at 200.

The controversy between the parties in this case arose because the County sought to take the Partnership's real property. The County initiated the condemnation process by petitioning the trial court to appoint special commissioners to determine the value of the Partnership land to be taken. The Partnership did not agree with the award of the special commissioners, and it was entitled to a judicial determination concerning the value of the land. The Partnership's challenge to the special commissioners' awards caused the matter to transition from a special condemnation proceeding to a cause pending in the county court to be tried and determined as other civil cases. Since at that point in the process the special commissioners' award was vacated, it was necessary that the County obtain a judgment from the trial court authorizing the taking of the Partnership's real property at a price that reflected the fair market value of the property. *See* Tex. Prop.Code Ann. § 2.018(b). Accordingly, the County was the plaintiff

in the lawsuit and the Partnership was the defendant. *Brammer*, 361 S.W.2d at 200.

■ This conclusion is fatal to the County's jurisdictional argument because under Texas law, the forfeiture of a limited partnership's right to transact business does not "prevent the limited partnership from *defending* an action, suit, or proceeding in a court of this state." TEX. BUS. ORGS.CODE ANN. § 153.309(b)(2) (emphasis added);[4] *Manning v. Enbridge Pipelines (E.Tex.) L.P.*, 345 S.W.3d 718, 723 (Tex. App.-Beaumont 2001, pet. denied) (forfeiture of the limited partnership's right to transact business does not prevent it from defending an action, suit, or proceeding in this state). Because the partnership was the defendant in the consolidated condemnation action and was not precluded by the laws governing Texas limited partnerships from defending the action, the County's claim that the trial court was without subject matter jurisdiction must fail. We resolve the County's first issue against it.

## Admission of Testimony of the Partnership's Appraiser

The County filed a motion and a supplemental motion to exclude the opinion testimony of the Partnership's appraisal expert, Clemo Ray, concerning the market value of the condemned land. Following an evidentiary hearing on the County's motion to exclude Ray's testimony, the trial court orally denied the County's motion, and Ray was permitted, over the County's objections, to testify at trial concerning the market values of the condemned land. In its second issue, the County asserts the trial court erred in admitting Ray's appraisal testimony.

### Standard of Review

■ The County's second issue relates to admissibility of expert witness testimony in the context of a condemnation proceeding. To be admissible, an expert must be qualified[5] and his or her opinion must be relevant and reliable. *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex.2009); *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 628 (Tex.2002). To be relevant, the expert's opinion must be based on the facts; to be reliable, the opinion must be based on sound reasoning and methodology. *Cent. Expressway*, 302 S.W.3d at 870; *see also Zwahr*, 88 S.W.3d at 629.

■ In a condemnation proceeding, the trial court has great discretion in determining whether "comparable" sales offered in evidence are similar to the land being taken, and a ruling by the trial court that a prior sale is sufficiently similar and therefore admissible will be reviewed only to determine whether there has been an abuse of discretion. *Bridges v. Trinity River Auth.*, 570 S.W.2d 50, 56 (Tex.Civ. App.-Tyler 1978, writ ref'd n.r.e.). Comparable sales are generally admissible unless it should appear that "reasonable minds cannot differ from the conclusion that the evidence of the other sale lacks probative

---

**4.** Section 153.309(b)(2) contains the identical provision as section 13.06(c) of the Revised Limited Partnership Act in effect at the time of the cancellation of the Partnership's certificate of registration. Section 13.06(c) of the Revised Limited Partnership Act provided that "[t]he forfeiture of the right to transact business in this state ... does not prevent the limited partnership from defending an action, suit, or proceeding in a court of this state." *See* Tex.Rev.Civ. Stat. Ann. art. 6132a–1,

§ 13.06(c), Act of May 31, 1993, 73rd Leg., R.S., ch. 917m § 8, 1993 Tex. Gen. Laws 3887, 3915–16 (expired Jan. 1, 2010), *(recodified in* TEX. BUS. ORGS.CODE ANN. § 153.309(b)(2)).

**5.** Neither the County nor the Partnership challenge the qualifications of the opposing party's expert.

force because of its dissimilarity" to the condemned property. *Id.* The discretion of the trial court is also very broad in determining whether "a sale is sufficiently similar to be admissible as a circumstance influencing an expert witness in arriving at his opinion of value." *Tex. Elec. Serv. Co. v. Graves,* 488 S.W.2d 135, 139 (Tex.Civ. App.-El Paso 1972, writ ref'd n.r.e.) (quoting *Tex. Pipe Line Co. v. Hunt,* 149 Tex. 33, 228 S.W.2d 151, 156 (Tex.1950)) ("It may well be that if the opinion should be shown to be based exclusively upon considerations of incompetent factors, it would have to be disregarded, 'but, all opinion being at best something of a speculation, it does not cease to have probative force when impropriety attaches only to some, rather than all, of its underlying reasons. The question of market value is thus peculiarly one for the fact finding body. . . .' ").

■■■■ Complaints of error in the admission of expert witness testimony are also reviewed under an abuse of discretion standard. *See Larson v. Downing,* 197 S.W.3d 303, 304–05 (Tex.2006). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985). Although the trial court serves as an evidentiary gatekeeper by screening out irrelevant and unreliable expert evidence, it has broad discretion to determine the admissibility of evidence. *Zwahr,* 88 S.W.3d at 629. A trial court abuses its discretion by excluding expert testimony if the testimony is relevant to the issues in the case and is based on a reliable foundation. *See id.* at 628.

### Analysis

Under the Texas Constitution, governmental entities are required to adequately compensate landowners when real property is taken for public use. Tex. Const. art.

I, § 17; *Cnty. of Bexar v. Santikos,* 144 S.W.3d 455, 459 (Tex.2004). The Partnership did not contend there was damage to the remainder of the Eastern Tract or the Western Tract after the takings by the County. Thus, only the value of the condemned property from the Eastern Tract and Western Tract was at issue at trial.

■■■■ When a governmental entity condemns real property, the normal measure of damages is the fair market value of the land at the time of the taking. Tex. Prop.Code Ann. § 21.042(b); *Zwahr,* 88 S.W.3d at 627. Thus, the central issue in the typical condemnation case is how to measure the market value of the condemned property. *See City of Harlingen v. Estate of Sharboneau,* 48 S.W.3d 177, 182 (Tex.2001). Market value is "the price the property will bring when offered for sale by one who desires to sell, but is not obligated to sell, and is bought by one who desires to buy, but is under no necessity of buying." *Id.* The three traditional approaches to determining market value are the comparable sales method, the cost method, and the income method. *Id.* Regardless of the appraisal method used by an expert, the goal of the inquiry is always to find the fair market value of the condemned property. *Id.* at 183. An appraisal method is valid only if it produces an amount that a willing buyer would actually pay to a willing seller. *Id.*

■■■■ Courts have long favored the comparable sales method when determining the market value of real property:

If the goal of an appraisal is to ascertain market value, then logically there can be no better guide than the prices that willing buyers and sellers actually negotiate in the relevant market. Under a comparable sales analysis, the appraiser finds data for sales of similar property, then makes upward or downward ad-

justments to these sales prices based on differences in the subject property.

*Id.* Comparable sales must be voluntary and should take place near in time to the condemnation, occur in the vicinity of the condemned property, and involve land with similar characteristics. *Id.* at 182. Comparable sales need not be in the immediate vicinity of the subject land, so long as they meet the test of similarity. *See City of Austin v. Cannizzo,* 153 Tex. 324, 267 S.W.2d 808, 815 (1954). But if the comparison is so attenuated that the appraiser and the fact finder cannot make adjustments for differences, a court should refuse to admit evidence of a "comparable" sale. *See, e.g., Holiday Inns, Inc. v. State,* 931 S.W.2d 614, 623–24 (Tex.App.-Amarillo 1996, writ denied) (remoteness in time); *Urban Renewal Agency v. Georgetown Sav. & Loan Ass'n,* 509 S.W.2d 419, 421–22 (Tex.Civ.App.-Austin 1974, writ ref'd n.r.e.) (similarity of neighborhood).

 Texas courts have long held it appropriate, in the context of condemnation proceedings, for a jury to consider "all factors ... which would reasonably be given weight in negotiations between a seller and a buyer" of the property. *Cannizzo,* 267 S.W.2d at 814, 815 (instructing the fact finder to consider all uses to which the land is "reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future"). Courts should admit as market-value evidence "such matters as suitability and adaptability, surroundings, conditions before and after, and all circumstances which tend to increase or diminish" market value. *Coble v. City of Mansfield,* 134 S.W.3d 449, 454 (Tex.App.-Fort Worth 2004, no pet.) (citing *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 194, 200 (1936)). *See also State v. McCarley,* 247 S.W.3d 323, 325–26 (Tex.App.-Austin 2007, pet. denied) (jury determining fair market value in a condemnation proceeding may consider current and reasonably probable future potential uses of the property, and consequential damages that in reasonable foreseeability will result from the condemnor's uses of the condemned property, "as such factors would ordinarily be given weight by willing buyers and sellers and, therefore, would be reflected in the property's fair market value."). A jury hearing opinion and "all testimony bearing on the issues of [condemned property's market] value" is "enlightened to give weight to the evidence and render its own conclusion." *Reeves v. City of Dallas,* 195 S.W.2d 575, 579 (Tex.Civ.App.-Dallas 1946, writ ref'd n.r.e.). This Court noted an expert witness and a jury would consider:

> [t]he location and environment of the property, the purchase and sale price in an open market of similar property in the same or near-by vicinity, the price that was voluntarily paid for the property taken, the availability of the property for similarly zoned business, the kind and character of occupancy, the encumbrances, contracts, liens, leases, etc., and many other elements....

*Id.*

In reaching their conclusions regarding appraisal values of the condemned properties, Ray, the Partnership's appraisal expert, and Charles Stearman, the County's appraisal expert, both used the well-accepted comparable sales methodology. Each expert compared three sales to the condemned properties. The experts used two of the same properties in their comparable sales analyses, known as the Staley and Flamingo sales. Ray utilized a third sale, known as the Melissa Land Partners sale, and Stearman utilized a third sale, known as the Perez sale.

According to Ray, the three comparable sales he utilized in formulating his market value opinions are generally similar to the

condemned properties in location, size, and physical characteristics, have the same highest and best use as a mixed-use development, and are vacant properties. The condemned properties are unzoned and not within the limits of any city. They consist of vacant agricultural land not situated on any major roads. Ray's comparable properties include two properties on U.S. Highway 75 (Central Expressway), the Staley and Flamingo sales, and zoned property near State Highway 5 in the Villages of Melissa planned development, the Melissa Land Partners sale. The Flamingo and Melissa Land Partners properties are located within the city limits of Melissa, Texas.

### Comparable Sales Methodology

■ The County contends the Melissa Land Partners sale relied upon by Ray in formulating his opinions regarding the fair market values of the condemned properties is not a comparable sale because that property has significantly different characteristics from the condemned properties. Specifically, the County alleges that the Melissa Land Partners property was zoned and a planned development, and that the seller of the property had committed to make significant infrastructure improvements, such as roads and pipe for water and sewer service. Therefore, the County contends Ray's reliance on the Melissa Land Partners sale in formulating his appraisals of market value renders his methodology unreliable and inadmissible under *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex.1996). *See also Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 720 (Tex.1998) ("Unreliable evidence is of no assistance to the trier of fact and is therefore inadmissible under Rule [of evidence] 702.").

Ray explained the comparable sales methodology, including the principle that comparable sales must have the same highest and best use as the condemned properties on the date of taking or within a reasonable period of time. To the extent the County argues that the Melissa Land Partners property and the condemned properties are materially different in terms of possible future uses, the argument is not supported by the record. The record indicates that at the time of the taking of the condemned properties, the Melissa Land Partners property and the condemned properties were undeveloped or "raw" land. Ray viewed the highest and best use of the condemned land to be a mixed-use residential and commercial development; consequently, it was not only logical but necessary that the comparable sales be suited to that same highest and best use, as was the Melissa Land Partners property and the other comparable sales Ray analyzed.

The County argues that the Melissa Land Partners property had been zoned and was a planned development at the time of its sale. Further, the County argues that at the time of the Melissa Land Partners property sale, the seller was obligated to make an expenditure of "several million dollars" in infrastructure improvements on the tract.[6] The County's point appears to be that some of the sale proceeds were dedicated to infrastructure improvements, which rendered the sale price for "raw land" used in Ray's analysis to be higher than it should have been. However, Ray testified that when he conducted his comparable sales analysis, he was told

---

6. The portion of the record cited by the County in support of its argument appears to indicate that the seller of the Melissa Land Partners comparable property was obligated to place about $914,000 of sale proceeds into escrow for future infrastructure improvements.

by the seller of the Melissa Land Partners property that the seller had no infrastructure obligations with respect to the portion of his property Ray viewed as comparable. Ray described infrastructure improvements the seller was apparently required to make, but explained that the infrastructure improvements were principally located on a portion of a larger tract of land that was not part of the Melissa Land Partners "comparable" sale used in Ray's analysis.

We conclude the trial court did not abuse its discretion in admitting evidence of the Melissa Land Partners comparable property sale. Evidence concerning this "comparable" sale did not render Ray's methodology unreliable because the comparable sales methodology involves analysis of properties with the same highest and best use. In Ray's opinion, the highest and best use of the Melissa Land Partners "comparable" property and the condemned properties was the same. Further, the question of the appropriateness of adjustments for differences relating to any commitments for infrastructure improvements on the Melissa Land Partners property was not a question of whether the basic comparable sales methodology was reliable. Instead, it was a fact-intensive question of whether, in the judgment of the expert witness based on facts obtained during his investigation, adjustments for differences permitted by the well-accepted methodology were appropriate in this circumstance. The trial court did not abuse its discretion in determining the evidence was admissible; it was the duty of the fact finder to determine the credibility and weight to be given to Ray's expert opinion.

## Paired Sales Analysis

The County argues Ray was inconsistent in his application of a paired sales analysis to the three comparable sales properties. We are unpersuaded by this argument.

■■■ Recognizing that the properties on Central Expressway, Staley and Flamingo, and the zoned property with a planned development, Melissa Land Partners, have some characteristics different from the condemned properties, which are not in any city and are located on a rural state highway, Ray employed a paired sales analysis to adjust for these differences. "A 'paired sale' analysis is a comparison of two or more pieces of property that, with one exception, have the same characteristics. A comparison of their value (sale price) identifies the effect, if any, that the one different characteristic has on the market value of the property." *Boswell v. Brazos Elec. Power Co-op., Inc.*, 910 S.W.2d 593, 604 n. 6 (Tex.App.-Fort Worth 1995, writ denied). The County acknowledges the paired sales analysis is a well-recognized real estate appraisal technique. *See, e.g., Royce Homes, L.P. v. Humphrey*, 244 S.W.3d 570, 576 (Tex. App.-Beaumont 2008, pet. denied) (utilizing paired sales analysis in real property stigma damage case).

The paired sales data used by Ray compared properties on Interstate Highway 35 in Waco, Texas, with properties on minor roads and was meant to quantify an adjustment between otherwise comparable properties that differ only because one property is located on a major highway and another on a minor road. That paired sales analysis indicated a major road location resulted in a market value twenty percent higher than a non-major road location.

Therefore, Ray concluded that land along Central Expressway in Collin County would be superior to similar land not located on Central Expressway. In making his market value appraisals, Ray adjusted the sales price of the Flamingo sale

comparable property, which is located on Central Expressway and is zoned property within the city limits of Melissa, down twenty percent based on location. Ray made no adjustment to the Staley sale comparable property located in Grayson County, although that property is located on Central Expressway. Ray explained that the unadjusted sale price of the Staley property and the adjusted sale price of the Flamingo property were almost the same, resulting in his determination that no adjustment to the Staley sale price was warranted. The Melissa Land Partners comparable sale property is not located on a major highway. However, because it is a planned development and in proximity to other developments, Ray determined the Melissa Land Partners property required a location adjustment. Ray utilized a twenty percent downward adjustment of the sales price of the Melissa Land Partners property based on the difference in location from the condemned properties.

■■■ Ray also recognized that the condemned properties are not within the boundaries of a city, while the Flamingo and Melissa Land Partners comparable sales properties are located within the city limits of Melissa and are zoned. Because the estimated cost of obtaining zoning of the properties was insignificant in comparison to their fair market values, Ray concluded that the zoning characteristics of the Flamingo and Melissa Land Partners comparable sales required no adjustment. While the County disagrees with this conclusion by Ray, that disagreement does not render Ray's methodology or opinions unreliable. The question of the appropriateness of adjustments for differences relating to zoning was not a question of whether the basic comparable sales methodology was reliable. Instead, it was a fact-intensive question of whether, in the judgment of the expert witness based on

facts obtained during his investigation, adjustments permitted by the well-accepted methodology were appropriate in this circumstance. The trial court did not abuse its discretion in determining the evidence was admissible; it was the duty of the fact finder to determine the credibility and weight to be given to Ray's expert opinion.

■■■ The County further assails Ray's paired sales analysis because it included properties in McLennan County, approximately one hundred miles from Collin County, where the condemned properties are located. In response, the Partnership notes the County's expert also relied, in part, on paired sales analysis for adjustment of market values based on property size, with Stearman acknowledging that he does not know if any of those paired sales involved property located in Collin County.

We are not persuaded by this argument by the County. The County has cited no authority, and we have found none, holding that evidence of paired sales comparisons must originate in the same geographical area. In *Boswell*, the valuation witness based his opinion on paired sale or "matched pair" analysis. *Boswell*, 910 S.W.2d at 604. The property owner contended the trial court erred by admitting matched pair data, because the matched pair tracts were outside the county where the subject property was located. *Id.* The appellate court concluded the matched pair data was not so prejudicial as to warrant exclusion, noting that the property owner cited no authority showing that paired sales comparisons must originate in the same geographical area, and held the trial court did not abuse its discretion in admitting the evidence. *Id.*

### Adjustments for Effects of Property Exposure and Visibility

The County contends that Ray's failure to make site-specific adjustments relating

to exposure and visibility characteristics that increase the value of the comparable sales properties relative to the condemned properties renders his appraisals unreliable. Ray testified he did not make adjustments for the effects of property exposure and visibility in making his appraisals because the owners of comparable sales property on Central Expressway have no property right in their superior traffic count, visibility, and ease of access. Ray believed that when an appraisal is done in a condemnation case, he is required to exclude such factors. For this reason, the County contends Ray's appraisal opinions were unreliable and inadmissible. We disagree.

In Ray's application of his paired sales analysis to the comparable sales properties and the condemned properties, exposure, visibility, and access were factors implicitly subsumed in the comparison of properties on major roadways to properties on minor roadways and the commensurate downward adjustment of the market values of the condemned properties. In any event, Ray's failure to explicitly analyze exposure and visibility factors relating to the comparable sales and make an adjustment reducing the market values of the condemned properties did not render Ray's methodology or opinions unreliable. The question of the appropriateness of adjustments for differences relating to exposure and visibility factors was not a question of whether the basic comparable sales methodology was reliable. Instead, it was a fact-intensive question of whether, in the judgment of the expert witness based on facts obtained during his investigation, adjustments permitted by the well-accepted methodology were appropriate in this circumstance. The trial court did not abuse its discretion in determining the evidence was admissible; it was the duty of the fact finder to determine the credibility and weight to be given to Ray's expert opinion.

## Conclusion

After review of the record, we conclude the trial court did not abuse its discretion in determining Ray's opinions were reliable and admitting Ray's testimony. Ray's opinions were grounded in the well-accepted appraisal methodologies of comparable and paired sales. We resolve the County's second issue against it.

## Admission of Testimony of the County's Appraiser

The Partnership filed a motion to strike Stearman's downward adjustments to comparable sales, based on exposure, visibility, and access, in making his market value appraisals of the condemned properties and to order Stearman to recalculate his market values for the condemned properties without those downward adjustments. The trial court denied the Partnership's motion to strike and to recalculate Stearman's market value appraisals. In its first cross-point of error, the Partnership argues the trial court reversibly erred in allowing Stearman to testify about his opinions concerning market values of the taken property, which opinions are based upon the purportedly "noncompensable" elements of exposure, visibility, and access.

### Standard of Review

The Partnership's first cross-point of error relates to the admissibility of expert witness testimony in the context of a condemnation proceeding. The standard of review described above in connection with the County's second issue applies to this issue as well.

### Analysis

In making his appraisals of the market values of the condemned property from the Eastern and Western Tracts, Stear-

man utilized the comparable sales method. According to Stearman, in performing a comparable sales analysis, he locates sales of tracts of land he believes are similar to the property taken. Those sales are then contrasted with the condemned property, and any superior or inferior differences in each sale as compared to the condemned property are adjusted. If the comparable sale is superior to the condemned property, the sale price receives a downward adjustment; conversely, if the comparable sale is inferior to the condemned property, the sale price receives an upward adjustment. After comparable sales are adjusted, the product of the analysis is an "adjusted range." Stearman then "reconciles" his market value opinion of the condemned property from the adjusted range of comparable property values.

In performing his appraisals on the condemned property, Stearman selected sales of three tracts of land he believed comparable to the condemned properties and that provided the best market data he could locate and confirm. In his appraisal of the condemned property from the Eastern Tract, Stearman made downward adjustments to the three comparable sales for elements of exposure, visibility, and access, based on the comparable sales' superior traffic volume, numbers of passersby, and visibility to the passersby. In his appraisal of the condemned property from the Western Tract, Stearman made downward adjustments to two of the three comparable sales for exposure, visibility, and access. Stearman's ranges of value for the comparable sales would have been higher had he not made the downward adjustments for these factors.

In his appraisals, Stearman states "[e]xposure is a function of traffic volume or drive-by business potential," and Stearman considers the concept of traffic volume and drive-by business potential to be essentially the same for purposes of his appraisals. Stearman defines "access" in his appraisals as "convenience of the route or routes of travel to the subject property and the proximity of those routes to major thoroughfares, services, and employment centers." Traffic by a property is an element of comparison Stearman utilizes in his comparable sales analysis, because it is a property characteristic a typical buyer and seller would consider.

■ The Partnership argues the trial court erred in allowing Stearman to render opinions concerning the market values of the condemned properties because Stearman improperly adjusted comparable sales for "noncompensable" elements of exposure, visibility, and access. According to the Partnership, this deficiency in Stearman's appraisal methodology produced unreliable valuation opinions that were not admissible at trial.

The Partnership relies on *State v. Schmidt*, 867 S.W.2d 769 (Tex.1994), in support of its contention. In *Schmidt*, the principal issue was whether a landowner, a portion of whose property was taken by power of eminent domain, is entitled to compensation for diminution in value of the remainder due to a diversion of traffic, an increased circuitry of travel to the property, a lessened visibility to the passersby, and the inconvenience of construction activities. *Id.* at 770. The supreme court held that the landowner could not recover damages for diminution in value of the remainder property for those factors. *Id.; see also State v. Dowd*, 867 S.W.2d 781, 782–783 (Tex.1993) (State's instruction to appraiser to exclude any decrease in value due to decreased visibility, accessibility and traffic volume, and increased circuitry of travel in determining damage to remainder tract was consistent with *Schmidt*).

However, the Partnership's argument misapplies *Schmidt.* The holding in *Schmidt* is limited to the assessment of damages to a landowner's remainder property after condemnation. In *Schmidt,* the State appealed only the award of severance damages and not the awards for the land taken. *Schmidt,* 867 S.W.2d at 772. Here, the Partnership does not contend the remainders of the Eastern and Western Tracts were damaged as a result of the condemnation, and did not seek damages for any alleged diminution in value of the remainder properties. Stearman's opinions concerning the questioned adjustments for exposure, visibility, and access do not relate to any alleged damage to the remainder properties as a result of the condemnation or proposed highway construction. Rather, Stearman's adjustments to the comparable sales were made to determine the market values of the condemned properties, based on the willing-seller willing-buyer test of market value. *See City of Pearland v. Alexander,* 483 S.W.2d 244, 247 (Tex.1972) (citing *Cannizzo,* 153 Tex. 324, 267 S.W.2d 808) (The willing-seller willing-buyer test of market value considers all factors "which would reasonably be given weight in negotiations between a seller and a buyer."); *see also City of Fort Worth v. Corbin,* 504 S.W.2d 828, 830 (Tex.1974) (determination of fair market value may be influenced by factors which would affect the price a prudent and willing buyer and seller would exchange for property exclusive of the fact of condemnation); *City of Sugar Land v. Home & Hearth Sugarland, L.P.,* 215 S.W.3d 503, 512 (Tex.App.-Eastland 2007, pet. denied) (testimony regarding property's characteristics and attributes willing seller and willing buyer would consider in settling on fair market value of property is admissible).

*Schmidt* addresses the proper measure of damages to the remainder tract resulting from the changes brought about by the condemnation project itself. The Partnership cited to no case, and we have found none, that indicates the holding in *Schmidt* applies to any issue other than damage to remainder property. *Schmidt* is not pertinent to the issue in this appeal of the fair market values of the properties taken as of the date of taking. The Partnership has cited to no case, and we have found none, indicating that, in order to assess the fair market value of property taken by condemnation based upon a comparable sales analysis, the physical differences between property taken and the comparable properties cannot be considered by an appraiser in arriving at the market value of the condemned property.

We conclude that Stearman's downward adjustments to the comparable properties' sale prices did not render his opinions unreliable and that the trial court did not abuse its discretion when it allowed Stearman's testimony about his opinions of market values of the properties taken. We resolve the Partnership's first cross-point of error against it.

### Exclusion of Donald Hixon's Opinion of Market Value

In its second cross-point of error, the Partnership contends the trial court erred by preventing the Partnership's general partner, Donald Hixon, from providing opinion testimony concerning the market value of the condemned property from the Eastern Tract. The Partnership contends that as a general partner of the Partnership, Hixon qualified to testify to his opinion of market value under the "property owner rule."[7] We review the

7. Ownership of the real property at issue was transferred to the Partnership after its forma-

trial court's decision to admit or exclude evidence for an abuse of discretion. *See Interstate Northborough P'ship v. State,* 66 S.W.3d 213, 220 (Tex.2001).

### Analysis

In its motion to exclude Hixon's opinion testimony, the County asserted the Partnership did not reasonably promptly supplement its responses to the County's discovery to inform the County that Hixon would offer opinion testimony concerning the property's market value. *See* TEX.R. CIV. P. 193.5; TEX.R. CIV. P. 193.6(a). The County also attacked Hixon's qualification to testify regarding the property's market value under the "property owner rule," the reliability of the basis for Hixon's opinion, and Hixon's personal knowledge of facts to support his market value opinion. Without stating the ground or legal basis for granting the motion to exclude, the trial court granted the County's motion to exclude opinion testimony of Hixon as to the market value of the property at the date of the taking.

The Partnership contends the trial court erred in excluding Hixon's opinion testimony of market value, arguing Hixon established the proper predicate for offering the testimony under the "property owner rule," and Hixon's opinion testimony as a lay witness comported with rules of evidence 602 and 701. *See* TEX.R. EVID. 602 & 701. However, the Partnership's contentions on appeal do not address the County's additional basis for seeking exclusion of Hixon's opinion testimony. In its motion to exclude Hixon's opinion testimony, the County contended the Partnership failed to reasonably promptly supplement or amend its responses to discovery to inform the County that the Partnership had an opinion regarding the market value of the property and that the Partnership intended to offer that opinion at trial through Hixon. In this Court, the Partnership did not address this ground for exclusion of Hixon's opinion testimony in its cross-appellant's brief; rather, the Partnership first addressed the subject in its reply brief.

When an appellee urges several objections to a particular piece of evidence and, on appeal, the appellant complains of exclusion of the evidence on only one of those bases, the appellant has waived that issue for appeal because he has not challenged all possible grounds for the trial court's ruling that sustained the objection. *Cantu v. Horany,* 195 S.W.3d 867, 871 (Tex.App.-Dallas 2006, no pet.); *see also Trahan v. Lone Star Title Co. of El Paso, Inc.,* 247 S.W.3d 269, 284 (Tex. App.-El Paso 2007, pet. denied). A reply brief may not be used to raise new issues. *See Dallas Cnty. v. Gonzales,* 183 S.W.3d 94, 104 (Tex.App.-Dallas 2006, pet. denied) ("The Texas Rules of Appellate Procedure do not allow an appellant to include in a reply brief a new issue in response to some matter pointed out in the appellee's briefs

---

tion. Hixon and his spouse are general partners of the Partnership. A property owner is qualified to testify to the market value of his property if the testimony is based on the owner's estimate of market value and not on some intrinsic or other value such as replacement cost. *Redman Homes, Inc. v. Ivy,* 920 S.W.2d 664, 669 (Tex.1996); *Porras v. Craig,* 675 S.W.2d 503, 504 (Tex.1984). The owner of the property can testify to its market value, even if he could not qualify to testify about the value of property belonging to someone else. *Porras,* 675 S.W.2d at 504. The rule is based on the presumption that an owner will be familiar with his own property and know its value. *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.,* 337 S.W.3d 846, 852–53 (Tex.2011). If the property is owned by a legal entity, only testimony "from an officer in a management position with duties that at least in some part relate to the property at issue, or an employee of the entity in a substantially equivalent position," falls within the property owner rule. *Id.* at 854–55.

but not raised by the appellant's original brief.").

The Partnership has waived any error as to the exclusion of the testimony of Hixon regarding the market value of the property. We resolve the Partnership's second cross-point of error against it.

## Conclusion

We have carefully considered the two issues advanced by the County and the two issues advanced by the Partnership and, for the reasons indicated in this opinion, we affirm the judgment of the trial court.