**Affirmed and Opinion Filed May 11, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-01160-CV**

**THE STATE OF TEXAS, Appellant**
**V.**
**SHERLEY PARTNERS, LTD.,**
**A TEXAS LIMITED PARTNERSHIP, Appellee**

**On Appeal from the County Court at Law No. 4**
**Collin County, Texas**
**Trial Court Cause No. 004-01692-2018**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Smith, and Breedlove
Opinion by Justice Breedlove

The trial court rendered judgment on a jury's verdict for appellee Sherley Partners, Ltd. in this condemnation case. In two issues, the State contends there is no evidence or insufficient evidence to support the jury's verdict and that the trial court erred by denying the State's motion to exclude evidence. We affirm the trial court's judgment.

### BACKGROUND

The State filed this statutory condemnation proceeding to acquire a portion of Sherley Partners, Ltd.'s property for the widening of State Highway (SH) 121 in

Collin County, Texas. The case proceeded to a jury trial to determine the damages to Sherley resulting from the taking.

As the State argued in closing, the parties agreed on several matters, including (1) the size of the property to be taken, (2) the value of the 7.9583 acres to be taken, (3) that the taking will result in a "sizeable" denial of access to the remaining acreage, and (4) that the taking will result in damages to Sherley.[1] The parties disagreed, however, on the damages resulting to the remaining acreage.

Sherley proffered the testimony of two expert witnesses to support its damages claim: Jon David Cross, a civil engineer, and Josh Korman, a real estate appraiser. Cross opined that after the taking, the entire property lacked adequate frontage on SH 121 to develop the remaining acreage in accordance with applicable fire codes and other development standards.

Korman testified that before the taking, the property's single highest and best use was "future mixed use," while after the taking, the property's single highest and best use was for "future residential." Korman performed two appraisals of the property–one of the entire 168 acre tract and one of the approximately160 acres remaining after the taking. He agreed with Cross that the 160 acre tract remaining

---

[1] In stipulations read to the jury, the parties agreed: "It is stipulated and agreed by and between the parties in this matter that in accordance with Section 21.042D of the Texas Property Code, there is a material impairment of direct access on or off defendant's remaining property that affects the market value of the remaining property," and "the only matter remaining at issue between plaintiff and the defendant in this case is the amount of compensation due to the defendant for the fair market value of the property condemned and taken and damages to the remainder of the property not taken." *See* TEX. PROP. CODE ANN. § 21.042(d).

after the taking would lose 1300 feet of access to SH-121, leaving only two small secondary roads for access to the remaining acres. He, therefore, opined that a proper calculation of the diminution in value required a consideration of the diminution in value of the entire remaining tract.

The State offered the testimony of its own engineer, Dawit Abraham, and real estate appraiser, Mitchell B. Todd. Abraham worked as a design consultant manager on the SH 121 project for the Texas Department of Transportation. Consistent with Cross' conclusion, Abraham acknowledged that the taking would result in a denial of access from the property to SH 121.

The crux of the parties' dispute centered around the testimony offered by Todd and Korman. While Korman agreed with Todd that that the comparable sales approach was the proper method to calculate the value of the remaining property, they disagreed on what tract of remaining property should be valued. Rather than consider the entire 168 acre tract, Todd testified that only approximately 30 acres was relevant. Todd opined that "the remaining 150 or so acres that the property owner has outside of the commercial area" did not need to be considered because "I don't think it's going to be damaged." He testified that he created the 30-acre tract by relying on a City of Anna future land use plan and market data. However, Todd admitted that the 30-acre tract lacked its own survey or legal description and had never been bought or sold in the market. He also acknowledged that the irregular shape he created for this tract was inferior to the shape of properties he used as

comparables in his appraisal. It was also undisputed by all experts there was poor access from SH 121 to both Todd's 30-acre tract, as well as the remaining acreage that Todd considered irrelevant.

The jury was charged to make findings regarding the fair market value of the property taken and the damages to the property remaining. Based on the jury's findings, the trial court rendered judgment for Sherley for $3,931,605.00. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

In two issues, the State contends (1) the trial court erred by denying the State's motion to exclude evidence and testimony, and (2) there is no evidence or insufficient evidence to support the jury's finding of $3,498,277.00 in damages to Sherley's remaining property in response to Question No. 2 of the jury charge.

We review the trial court's rulings on admission and exclusion of evidence for abuse of discretion. *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 142 (Tex. 2016); *Collin Cty. v. Hixson Family P'ship, Ltd.*, 365 S.W.3d 860, 869 (Tex. App.—Dallas 2012, pet. denied) (complaints of error in admission of expert witness testimony in condemnation case are reviewed for abuse of discretion). We also review a trial court's enforcement of a scheduling order for abuse of discretion. *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 295–96 (Tex. App.—Dallas 2009, no pet.). A trial court abuses its discretion when it acts without regard for any guiding rules. *Caffe Ribs, Inc.*, 487 S.W.3d at 142.

–4–

An appellant attacking the legal sufficiency of an adverse finding on which it did not have the burden of proof must demonstrate that no evidence supports the finding. *State v. Johnson*, 444 S.W.3d 62, 82 (Tex. App.—Dallas 2014, pet. denied). There is "no evidence" when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.* "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* (internal quotations omitted). We review the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Id.*

In conducting a factual sufficiency review, we consider and weigh all the evidence. *State v. CC Telge Rd., L.P.*, 605 S.W.3d 742, 759 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). When there is a challenge to the factual sufficiency of evidence supporting an adverse finding on which the appellant did not have the burden of proof at trial, we set aside the verdict only if the evidence supporting the finding is so weak as to make the verdict clearly wrong and manifestly unjust. *Id.*

The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *McKinney Indep. Sch. Dist. v. Carlisle Grace, Ltd.*, 222

S.W.3d 878, 882 (Tex. App.—Dallas 2007, pet. denied). We defer to the jury's determination of these matters and to its resolution of conflicting evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 819–20 (Tex. 2005).

**DISCUSSION**

The Texas Constitution requires the State to compensate landowners when it takes property for public use. TEX. CONST. art. I, § 17. When the State takes only part of a landowner's property, the State must make adequate compensation both for the part taken and for any severance damages to the remainder not taken. *Johnson*, 444 S.W.3d at 70. Damages to the remainder of the property are generally calculated by ascertaining the market value of the remainder immediately before and immediately after the condemnation, considering the nature of any improvements and the use of the land taken. *Id.* Here, the State challenges the admissibility and sufficiency of the evidence to support the jury's award of damages.

**1. Admission of expert valuation testimony**

In its first issue the State contends the trial court erred by denying the State's motion to exclude appraiser Joshua Korman's opinions. The State argues that Korman's opinions should have been excluded as "unreliable, irrelevant, speculative, and conclusory."

Sherley responds that the State waived its objections to Korman's testimony by failing to file them by the deadline for doing so in the trial court's scheduling

–6–

order. Sherley also argues that even if the State's objections were timely made, the trial court did not abuse its discretion by allowing Korman to testify.

We conclude the trial court did not err by denying the State's untimely motion and that Korman's opinions were not conclusory.

## A. State's motion to exclude

The trial court's scheduling order required the parties to file motions to exclude expert witnesses, "including but not limited to those motions to exclude per the Robinson/Daubert standards," by December 16, 2019. The order's deadlines applied "unless modified by written agreement by the parties or by further order of this Court." The December 16, 2019 deadline was never extended in the parties' later agreements to continue the trial date and extend other deadlines.

Sherley designated Korman as an expert on July 12, 2019[2] and produced his expert report on the same day. The State did not file any motions challenging Korman's opinions until September 8, 2021, more than a year after the deadline and less than a week prior to commencement of trial. The State's motion challenged Korman's assignment of a single value per acre and a single future use to the entire acreage both before and after the State's taking. The State argued that Korman's failure to assign different values that corresponded to specific future uses rendered his opinions "logically inconsistent."

---

[2] Although the appellate record does not include the designations, both parties state in their briefs that they designated their experts on July 12, 2019.

Sherley filed written objections to the State's motion later the same day, complaining that the motion was untimely, highly prejudicial, and lacked good cause. Sherley filed additional objections on the morning of trial addressing the substance of the State's complaints about Korman's opinions.

The trial court heard the motion to exclude immediately before empaneling the jury on September 13, 2021, and denied it in a written order that did not specify the grounds. The State made no further objections to Korman's testimony.

The State argues that because the trial was postponed to a date more than three months after the discovery period ended, its objections were timely. The State cites rule of civil procedure 190.5 in support of its argument. But the plain language of rule 190.5(b) requires the trial court to allow additional discovery "regarding matters that have changed materially after the discovery cutoff if trial is set or postponed so that the trial date is more than three months after the discovery period ends." TEX. R. CIV. P. 190.5(b). Korman's report and opinions were produced to the State more than two years before trial, and the State does not identify any matter that "changed materially" after the scheduling order's deadlines elapsed.

We conclude the State waived its objections to Korman's testimony by failing to object by the date set in the court's scheduling order. *See B/K Series Invs., LLC v. ECOM Series Invs., LLC*, No. 05-22-00115-CV, 2023 WL 2821876, at *11 (Tex. App.—Dallas Apr. 7, 2023, no pet. h.) (mem. op.) (appellant waived objection to expert testimony by failing to object by date set in scheduling order). Accordingly,

–8–

the trial court did not abuse its discretion by denying the State's motion. *Collin Cty.*, 365 S.W.3d at 869; *see also Esty*, 298 S.W.3d at 296 (no abuse of discretion to strike expert's affidavit not filed by deadline in scheduling order).

**B. No-evidence challenge to Korman's testimony**

Despite its failure to timely object at trial, the State may challenge Korman's testimony as conclusory, making a no-evidence challenge on appeal. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 223 (Tex. 2019). Conclusory testimony cannot support a judgment because it is considered no evidence. *Id.* at 222. "An expert's testimony is conclusory when the expert asserts a conclusion with no basis." *Id.* at 223. The court in *Bombardier Aerospace Corp.* explained:

> If the jury must guess if a vital fact exists, a reviewing court does not undermine the jury's role by sustaining a no-evidence challenge. If reasonable and fair-minded people would differ in their conclusions based on the trial evidence, then jurors may also. And if the evidence falls within this zone of reasonable disagreement, a court may not substitute its judgment for the jury's. We consider the evidence in the light most favorable to the verdict, indulging every reasonable inference in support of the verdict. In determining whether the testimony [the expert] presented to the jury was conclusory, we consider the face of the record, which includes his testimony to the jury and his appraisal report.

*Id.* (citations omitted).

An expert must connect the data relied on to his opinion and show how that data is valid support for the opinion reached. *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 717 (Tex. 2016). "If there is too great an analytical gap between

the data relied on and the expert's opinion, the expert's testimony is unreliable." *Id.* "[A]n expert's statement or opinion is conclusory when: (1) he asks the jury to take his word that his opinion is correct but offers no basis for his opinion or the bases offered do not actually support the opinion; or (2) he offers only his word that the bases offered to support his opinion actually exist or support his opinion." *Windrum v. Kareh*, 581 S.W.3d 761, 769 (Tex. 2019). "The line determining whether an expert opinion is conclusory is difficult to draw, and close calls must go to the trial court." *Id.* at 770 (internal quotation omitted). "[W]hen the evidence falls within the zone of reasonable disagreement, the court may not substitute its judgment for that of the fact finder." *Id.*

The State complains that Korman's testimony about the value of the property both before and after the taking is "logically inconsistent." The State argues that in valuing the property before the taking, Korman could not specify exactly when, how, or where commercial development would occur, yet he applied the same value throughout the entire tract without accounting for different uses. The State argues that in valuing the property after the taking, Korman reduced all portions of the acreage by the same amount despite his acknowledgement that commercial development would not extend to the rear of the property. The State contends that developing that portion of the property for residential use would be borne by a developer, a city, or a county, not Sherley.

On these issues, however, Korman did not merely offer his word to the jury without explaining the basis for his opinions. *See Windrum*, 581 S.W.3d at 777 (expert's testimony was not conclusory when he provided specific reasons for his conclusions based on his expertise). The record reflects that Korman provided detailed testimony about the before and after appraisals he conducted on the property, the principles he applied in determining the highest and best use of the property, the data he considered, and the information he obtained from civil engineer Cross, who also testified at trial.

Korman analyzed a total of thirteen comparable property sales in determining the property's value before and after the taking. He testified that in his opinion, the eight acres acquired by the State would not sell in the marketplace by itself. He also explained that the eight acres "contributed to the whole" tract by providing access, and that after the taking, "because of the denial of access, and only being able to have accessibility of the property from a fairly narrow driveway, 30 feet, you're limited to the usage that you can put on the property." He opined that with "one 30-foot entrance versus two or three 60-foot entrances," the property lost 40 percent of its value. In his opinion, the property had "been moved from a mixed use to just a residential, and quite frankly something that is a little bit more speculative in nature." Civil engineer Cross agreed, testifying that the property had "1,600 linear feet of frontage on State Highway 121 with no restrictions for access" before the State's taking, but after the taking, "[y]ou've lost your front door" to SH 121.

–11–

Although Korman could not predict exactly when and how development would occur, he explained why he concluded that the property had a higher and better use than its existing use. Korman explained that the property is located in "one of the fastest growing counties in the entire United States," describing the growth as "phenomenal." He testified that he considered the property's most likely buyer to be one "who would buy and hold this land for future mixed use," an investor with "a long-term perspective on the market." "Holding land as an investment is a legitimate use of land and a theory of market value that a jury may consider." *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 611 (Tex. 2016).

Korman concluded that absent the State's taking, Sherley's 168 acres would have had a mix of uses in the future including "some type of residential, and then you have a commercial aspect to it, so it could be retail, office and potentially some light industrial." He opined that the property was not ready for mixed use development on the dates of his appraisals, because although "development is coming that way, it's just not there." He testified that the residential use would develop first, and then the commercial, retail, and office uses would follow. The record reflects that Korman explained his methodology in valuing the property and how he applied the methodology to reach his conclusions. *See Windrum*, 581 S.W.3d at 777. Accordingly, we conclude his opinions were not conclusory. *See id.*

Todd's differing opinion about how to apply the same valuation methodology—by assigning a value to only a small portion of the remaining

property—did not render Korman's opinions conclusory.[3] *See In re State*, 355 S.W.3d 611, 617 (Tex. 2011) (orig. proceeding) (where parties disagreed about applicable economic unit and highest and best use for condemned property, they should be permitted to offer evidence to support their contentions at trial). "[O]pinions are not legally insufficient simply because the opinions contradict one another. Instead, the opinions raise fact issues which the jury must resolve." *McKinney Indep. Sch. Dist.*, 222 S.W.3d at 885.

Considering the evidence in the light most favorable to the jury's verdict and indulging every reasonable inference in support of the verdict, we conclude the jury was not required to "guess if a vital fact exists" in answering the questions about the property's value and that reasonable and fair-minded people could differ in their conclusions based on the trial evidence. *See Bombardier Aerospace Corp.*, 572 S.W.3d at 223. Accordingly, we decide the State's first issue against it.

---

[3] On appeal, the State also contends Korman's "qualitative" analysis of comparable properties was inferior to Todd's "quantitative" analysis. Todd testified that he made percentage adjustments to account for the differences between Sherley's property and the comparable properties used in his analysis, rather than noting only whether a comparable property was superior, inferior, or equal to Sherley's. Sherley responds that Korman "did explain the bases for his adjustments," testifying without objection about "land sales adjustment grids" he created for considering differences in "property rights conveyed, financing terms, conditions of sale, market conditions, et cetera" in the properties. Sherley argues the State did not object to Korman's testimony on this basis or otherwise challenge the adjustments Korman made. Todd himself testified that his use of a quantitative analysis was "just my preference" "to get a little more precise," but that "[o]ther appraisers do it qualitatively." As we have explained, the State has waived complaints about Korman's testimony other than a no-evidence challenge. *See Bombardier Aerospace Corp.*, 572 S.W.3d at 223. To the extent the State contends Korman's use of a qualitative analysis renders his opinions impermissibly conclusory and unsupported by any evidence, the record does not support this argument.

## 2. Sufficiency of the evidence

In its second issue the State contends there is no evidence or insufficient evidence to support the jury's verdict. The State argues that the jury's findings were influenced by the erroneous admission of Korman's testimony, resulting in the rendition of an improper judgment. Because we have concluded that the trial court did not err by admitting Korman's testimony, however, the jury could consider it in making its findings. *See CC Telge Road, L.P.*, 605 S.W.3d at 759–60 (holding "ample evidence" supported jury's verdict after rejecting State's admissibility arguments).

Sherley argues that the jury "acted well within its discretion" when it accepted the testimony of Sherley's experts. In Question No. 2, the only finding at issue in this appeal,[4] the jury was asked to determine "the damages to Sherley Partners' Remaining Property as of July 30, 2018." The jury answered $3,498,277.00, the amount Sherley requested in closing argument based on Korman's testimony that the value of the remaining acres was $3,486,447.00, plus $11,830.00 as the "cost to cure" damage to the remainder. *See Mian Dev't Corp. v. State*, No. 05-17-01385-CV, 2019 WL 6486282, at *7 (Tex. App.—Dallas Dec. 3, 2019, pet. denied) (mem. op.)

---

[4] The jury charge consisted of two questions. In Question No. 1, the jury was asked to determine "the Fair Market Value due to Sherley Partners for the State's Taking as of July 30, 2018." The jury answered $433,328.00, the amount Sherley requested for the 7.9583 acres taken by the State. Korman testified to his calculations supporting Sherley's request for this amount. As the State argued for the jury to find a higher number in response to Question No. 1, the State does not now challenge the sufficiency of the evidence to support the jury's answer.

("When only a part of a tract is taken, as here, the landowner is entitled to (1) the fair market value of the part taken and (2) any damage to the remainder as a result of the taking." [internal quotation omitted]).

As we have discussed, the parties' experts offered conflicting opinions about how to value Sherley's property. These opinions raised fact issues for the jury's resolution. *McKinney Indep. Sch. Dist.*, 222 S.W.3d at 885. The jury's answer to Question No. 2 was supported by the evidence Sherley offered at trial. Concluding that the evidence was legally and factually sufficient to support the jury's verdict, we decide the State's second issue against it. *See id.*; *Johnson*, 444 S.W.3d at 82 (legal sufficiency standard); *CC Telge Rd., L.P.*, 605 S.W.3d at 759 (factual sufficiency standard).

## CONCLUSION

The trial court's judgment is affirmed.


211160f.p05

/Maricela Breedlove//
MARICELA BREEDLOVE
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-21-01160-CV        V.

SHERLEY PARTNERS, LTD., A
TEXAS LIMITED PARTNERSHIP,
Appellee

On Appeal from the County Court at
Law No. 4, Collin County, Texas
Trial Court Cause No. 004-01692-
2018.
Opinion delivered by Justice
Breedlove. Justices Partida-Kipness
and Smith participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Sherley Partners, Ltd., a Texas Limited Partnership recover its costs of this appeal from appellant the State of Texas.

Judgment entered this 11th day of May, 2023.